**Carol Billie OSHANA, Plaintiff,**

v.

**The COCA–COLA COMPANY,
a Delaware Corporation,
Defendant.**

**Civil Action No. 04 C 3596.**

United States District Court,
N.D. Illinois,
Eastern Division.

April 24, 2007.

Ben Barnow, Barnow & Associates, P.C., William J. Harte, Dana Marie Pesha, Peter James McCarthy, William J. Harte, Ltd., Aron David Robinson, Law Office of Aron D. Robinson, Melinda J. Morales, Michael B. Hyman, Much, Shelist, Freed, Denenberg, Ament & Rubenstein, P.C., Robert J. Stein, III, Stein Bogot, Ltd., Chicago, IL, Lance A. Harke, Sarah Clasby Engel, Harke & Clasby LLP, Miami, FL, for Plaintiff.

Michael A. Pope, Christopher Mac Neil Murphy, David L. Hanselman, Jr., John Christian Nemeth, Rachael M. Trummel, McDermott, Will & Emery LLP, Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

CONLON, District Judge.

On August 4, 2005, this court entered judgment in favor of Carol Billie Oshana and against the Coca–Cola Company in the amount of $650, plus reasonable costs and attorneys' fees. The judgment resolved Oshana's individual and class claims against Coca–Cola for unjust enrichment and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("the Consumer Fraud Act"), 815 ILCS §§ 505/1, *et seq.* The judgment, entered under Fed.R.Civ.P. 68, explicitly stated it was not an admission of Coca–Cola's liability or Oshana's damages. Dkt. No. 192 (August 4, 2005). Oshana filed a motion for attorneys' fees and expenses seeking $1,100,509.77. Dkt. No. 210 (Nov. 30, 2005). The motion was referred to Magistrate Judge Sidney I. Schenkier for a report and recommendation. Fed. R.Civ.P. 54(d)(2)(D). Magistrate Schenkier recommended the court award no attorneys' fees or costs because even though Oshana technically prevailed, her recovery was *de minimis.* Dkt. No. 244 (March 19, 2007). Oshana objects to the report and recommendation. Dkt. No. 245 (April 2, 2007). For the reasons set forth below, Magistrate Schenkier's thorough and carefully analyzed report and recommendation is adopted in its entirety. Oshana's motion for attorneys' fees and expenses is denied.

## BACKGROUND

### I. Underlying Litigation

This diversity action was originally filed in state court on March 12, 2004. Oshana[1] alleged that Coca–Cola committed fraud in connection with its disclosures regarding artificial sweeteners used in fountain diet Coke.[2] Oshana alleged Coca–Cola failed to disclose that unlike diet Coke sweetened with aspartame sold in cans and bottles, fountain diet Coke was sweetened with a blend of aspartame and saccharin. Oshana, on behalf of herself and a purported class of all persons in Illinois who purchased fountain diet Coke since 1984, alleged unjust enrichment by Coca–Cola and violation of the Consumer Fraud Act. Her state court complaint expressly disclaimed individual damages in excess of $75,000. Coca–Cola asked Oshana to admit she would not individually seek total recovery for disgorgement, attorneys' fees and punitive damages in excess of $75,000. Oshana refused, and Coca–Cola removed the case to federal court. Oshana moved for remand, arguing that the case failed to meet the $75,000 jurisdictional amount. This court denied the motion, holding that the complaint's prayer for relief, combined with the value of disgorgement, established the plausibility of Coca–Cola's good faith estimate that the amount in controversy exceeded $75,000. Dkt. No. 24 (July 16, 2004).

Coca–Cola moved for summary judgment on statute of limitations grounds. This court granted the motion in part, holding that Oshana was barred from recovering on any Consumer Fraud Act violations occurring prior to March 12, 2001, and on any unjust enrichment claims for violations occurring prior to March 12, 1999. Dkt. No. 29 (July 30, 2004). Oshana filed an amended complaint reflecting the narrower recovery periods. Dkt. No. 44 (Sept. 7, 2004). The amended com-

---

1. The original named plaintiff was David Hahn. Oshana was substituted for Hahn in the second amended complaint. Dkt. No. 52 (Sept. 29, 2004). For simplicity, both the magistrate judge's report and this order refer to the plaintiff as Oshana.

2. The report and recommendation includes detailed factual findings relevant to the underlying litigation and the motion for attorneys' fees and costs. The facts are drawn from that report unless otherwise noted.

plaint sought $1,000 in damages, but asserted that the disgorgement remedy would total, individually and as a class, in the tens or hundreds of millions of dollars.

Oshana's motion for class certification was denied. Dkt. No. 85 (Jan. 14, 2005). Coca–Cola filed a second summary judgment motion arguing that Oshana could not obtain disgorgement of profits beyond those attributable to sales of diet Coke specifically to Oshana. During briefing on this motion, Oshana reaffirmed that she sought disgorgement in her individual capacity. This court granted Coca–Cola's motion in part, holding that Oshana could not seek disgorgement remedies for injuries allegedly suffered by other consumers, and that her claim was limited to individual damages of $650. Dkt. No. 176 (July 13, 2005).

With trial deadlines approaching, Coca–Cola made an offer of judgment pursuant to Fed.R.Civ.P. 68 in the amount of $650, plus reasonable attorneys' fees and costs. Oshana accepted the offer and judgment was entered in her favor. Dkt. No. 192 (Aug. 4, 2005). The judgment did not constitute an admission that Coca–Cola was liable, or that Oshana suffered damages, and had no effect whatsoever except in resolving the action. *Id,* Oshana reserved her right to appeal. *Id.*

## II. Appeal

Oshana appealed this court's rulings on jurisdiction and class certification. Both were affirmed. *Oshana v. Coca–Cola Co.,* 472 F.3d 506 (7th Cir.2006). The Seventh Circuit held that removal was proper because, notwithstanding the original complaint's express disclaimer of individual damages over $75,000, Oshana's refusal to admit that she would not seek more than $75,000 made it plausible that more than $75,000 was actually at stake. *Id.* at 511–12. Denial of class certification was also affirmed. *Id.* at 513–15.

## III. Magistrate Judge's Report and Recommendation

On November 30, 2005, Oshana moved for attorneys' fees and expenses. Dkt. No. 210. She seeks $948,699.25 in attorneys' fees and $151,810.52 in costs, for a total of $1,100,509.77. The request for fees represents 2,581.90 hours of work performed by 19 attorneys from six firms. The motion was referred to the assigned magistrate judge for a report and recommendation. Dkt. No. 217 (Dec. 7, 2005).

By agreement of the parties, the magistrate judge stayed consideration of the motion during the pendency of the appeal. The appeal was decided on December 29, 2006; me magistrate judge's report and recommendation was issued on March 19, 2007. Dkt. No. 244. He recommended that no attorneys' fees or costs be awarded because (1) Oshana's recovery is too *de minimis* to reasonably warrant any award; and (2) even if her small recovery warranted an award, the amount of fees and costs she seeks is so high, and reflects such overreaching, that the reasonable award is zero. *Id.* at 2. The magistrate judge concluded Oshana was not entitled to any award because the difference between her judgment ($650) and the amount she sought (tens or hundreds of millions of dollars) was vast, she failed to succeed on any legal issue of significance, and the litigation did not serve a public purpose. He also recommended that costs be denied because (1) expert fees are non-taxable costs that are not explicitly authorized by the Consumer Fraud Act; and (2) Oshana waived her right to pursue taxable costs by failing to file her bill of costs within 30 days, as required by Local Rule 54.1(a). *Id.* at 3.

## IV. Oshana's Objections

Oshana objects to the report and recommendation on four grounds. First, she argues the magistrate judge incorrectly

concluded that Coca–Cola was successful in its summary judgment motions. Second, she argues the report erroneously presumed that she took the position that the case could not be settled on an individual basis. Third, the report overrides the language and purpose of the Consumer Fraud Act. Finally, she argues the report and recommendation cannot be reconciled with the Seventh Circuit's opinion, which she contends held that she did not seek more than $75,000 in damages.

## DISCUSSION

### I. Standard of Review

The court may refer a motion for attorneys' fees to a magistrate judge under Fed.R.Civ.P. 72(b) as if it were a dispositive pretrial matter. Fed.R.Civ.P. 54(d)(2)(D). Review of a magistrate judge's recommendation on a dispositive motion is *de novo*. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b); *see also Rajaratnam v. Moyer*, 47 F.3d 922, 924 (7th Cir.1995) (district court reviews magistrate judge's factual determinations and legal conclusions on a motion for fees *de novo* ). The reviewing court is required to "make a *de novo* determination of those portions of the recommendations to which objection is made." *Willis v. Caterpillar, Inc.*, 199 F.3d 902, 904 (7th Cir.1999). The court may accept, reject, or modify the findings or recommendations made by the magistrate judge. *Id.* If no specific objection is made, or only a partial objection, the district court reviews the uncontested portions for clear error. *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

### II. Award of Fees and Costs under Rule 68 and the Consumer Fraud Act

Coca–Cola's Rule 68 offer of judgment must be interpreted in light of the fee-shifting provision of the Consumer Fraud Act. *Webb v. James*, 147 F.3d 617, 621 (7th Cir.1998). The Consumer Fraud Act provides that the court may award reasonable attorneys' fees and costs to the prevailing party. 815 ILCS § 505/10a(c). The court has discretion to deny fees if the prevailing party's recovery is "merely technical or *de minimis.*" *Fisher v. Kelly*, 105 F.3d 350, 352 (7th Cir.1997), *see also Fletcher v. City of Ft. Wayne, Ind.*, 162 F.3d 975, 976 (7th Cir.1998) ("for trivial recoveries, the only reasonable reward is zero"). Coca–Cola concedes Oshana is the prevailing party for purposes of awarding fees and costs, but argues that in light of her $650 recovery, the only reasonable award of fees and costs is zero. The magistrate judge agreed, concluding that Oshana was not entitled to fees because her $650 recovery was merely technical or *de minimis*.

■ To determine whether Oshana's recovery is merely technical or *de minimis*, the court examines three factors: "the difference between the judgment recovered and the recovery sought, the significance of the legal issue on which the plaintiff prevailed and, finally, the public purpose served by the litigation." *Cartwright v. Stamper*, 7 F.3d 106, 109 (7th Cir.1993); *Fisher*, 105 F.3d at 353. The first factor is the most important, and the second factor is the least significant. *Id.* at 109–10.

#### A. Difference Between Amount Sought and Judgment

■ Oshana sought $1000 in individual damages, plus tens or hundreds of millions of dollars in disgorgement of revenues. She received $650, only .0065 percent of the low end of the amount she sought. Fees have been denied because plaintiff "overreached" where the verdict of $1,115,000 was four percent of the $25.6 million plaintiff sought. *Bankcard America, Inc. v. Universal Bancard Sys., Inc.*, 203 F.3d 477, 486 (7th Cir.2000). The vast difference between the recovery Oshana

sought and the judgment she received weighs heavily against any award of fees.

Oshana argues the magistrate judge's analysis is premised on the erroneous finding that she sought more that $75,000 individually. Oshana contends the Seventh Circuit's opinion held that "[o]n the face of Oshana's state-court complaint ... [s]he expressly disclaimed individual damages over $75,000." *Oshana*, 472 F.3d at 511. Oshana's citation is misleading. She mischaracterizes the court's observation as a holding, and ignores the more significant statement in the same paragraph that "Oshana's disclaimer had no legal effect." *Id.* The court went on to find that Oshana's refusal to admit that she would not seek damages in excess of $75,000 raised the inference that she believed her claim was worth more. *Id.* at 512. The court held removal was proper, noting that Oshana could not benefit by playing a "cat-and-mouse game" of disclaiming damages in excess of $75,000 to defeat federal jurisdiction, while preserving her right to recover more by refusing to stipulate to the jurisdictional limit. *Id.* at 512–13.

In both her Consumer Fraud Act and unjust enrichment claims, Oshana consistently sought disgorgement of Coca–Cola's revenues from the sale of fountain diet Coke attributable to the alleged wrongful conduct. In Coca–Cola's second summary judgment motion, this court ruled that Oshana's individual damages were $650, and any recovery for disgorgement was limited to any ill-gotten gains obtained from Oshana herself in connection with the alleged misconduct. Dkt. No. 176 (July 13, 2005). Coca–Cola then made its offer of judgment and Oshana accepted. But the record does not support Oshana's assertion she sought damages less than $75,000.

## B. Legal Issues

Oshana failed to succeed on any legal issue of significance. She sought to repre-

sent a class of individuals allegedly defrauded by Coca–Cola's unfair and deceptive marketing scheme. Bottled diet Coke is sweetened exclusively with aspartame, but fountain diet Coke is sweetened with a mixture of aspartame and saccharin. Oshana alleged that Coca–Cola mislead consumers into believing that fountain diet Coke is the same as bottled diet Coke. She contended that Coca–Cola's deceptive practices enabled it to sell millions of dollars in beverages it would not otherwise have sold.

Oshana failed to succeed on her theory of liability. *Cartwright,* 7 F.3d at 110. She did not establish that her case could be brought on a class-wide basis. Class certification was denied, and the denial was affirmed on appeal. *Oshana,* 472 F.3d at 513–15. She failed to establish that her claims could extend to 1984, or that she was entitled to disgorgement of Coca–Cola's revenues from sales to other consumers. Nor did Oshana succeed in remanding the case to state court. Her motions to remand and for reconsideration were denied, and jurisdiction was affirmed on appeal. *Id.* at 510–13. Oshana's only success was in obtaining a Rule 68 judgment of $650, which expressly disclaimed liability and damages.

Oshana objects to the magistrate judge's characterization of the procedural history of the case. She argues she was successful because in ruling on Coca–Cola's first summary judgment motion, this court adopted her alternative position of limiting her claims to three and five years rather than denying her claims completely. While her claims survived, their scope was narrowed significantly from the twenty-year period she initially sought. This does not represent success on an issue of legal significance. Oshana also argues this court's ruling on Coca–Cola's second sum-

mary judgment motion was not a total victory for Coca–Cola. However, the ruling cannot be seen as a success for Oshana because it limited her individual damages and barred her recovery for disgorgement of sales revenue from other putative class members.

Oshana argues the magistrate judge failed to acknowledge her success on several discovery motions. She contends fees should be awarded associated with these motions. Oshana's success in discovery disputes does not demonstrate success in proving her theory of liability. On the contrary, Oshana's theory of liability failed on every front.

### C. Public Purpose

█ A legal victory serves a public purpose if it "vindicates important rights and deters future violations." *Cartwright,* 7 F.3d at 110. Oshana's $650 judgment does neither. The judgment specifically disclaimed liability. The amount is so small that it could not reasonably be seen as a deterrent to future violations. Oshana did not seek nor was she awarded punitive damages. *Id.* (an award of punitive damages is strong evidence the victory served a public purpose). The magistrate judge correctly observed that Oshana's judgment represented a Pyrrhic victory: her recovery was merely technical, served no public purpose, and does not warrant any award of fees and costs. *Farrar v. Hobby,* 506 U.S. 103, 117, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) (O'Connor, J., concurring).

Oshana argues the report and recommendation eviscerate the legislative intent of the Consumer Fraud Act. The purpose of the fee-shifting provision of the Consumer Fraud Act is to encourage plaintiffs who have a cause of action to sue, even if men recovery would be small. *Cruz v. Northwestern Chrysler Plymouth Sales, Inc.,* 179 Ill.2d 271, 227 Ill.Dec. 960, 688 N.E.2d 653, 657 (1997). Notwithstanding this provision, the court has discretion to deny fees and costs for trivial, *de minimis* recoveries. Denial of fees will not deter plaintiffs who have a statutory claim. It may encourage prospective plaintiffs to carefully consider their claims to avoid *de minimis* judgments and the risk of denial of fees and costs.

### III. Costs

█ The magistrate judge cited two additional reasons why Oshana should not be awarded costs. She failed to specifically object to his recommendations regarding costs. Therefore, the costs recommendation is reviewed for clear error. *See Johnson,* 170 F.3d at 739. First, he recommended that non-taxable costs for expert witnesses be denied because the Consumer Fraud Act does not explicitly provide for an award of expert costs. *See T.D. v. LaGrange School Dist. No. 102,* 349 F.3d 469, 482 (7th Cir.2003) (costs do not include expert witness fees absent explicit statutory authorization). Second, he recommended that taxable costs be denied because Oshana failed to file her bill of costs within 30 days of the entry of judgment. Local Rule 54.1(a). Nothing in this analysis suggests the recommendation that costs not be awarded is erroneous in any respect.

### CONCLUSION

This court adopts the magistrate judge's report and recommendation in its entirety pursuant to Fed.R.Civ.P. 72 and 28 U.S.C. § 636. Oshana's motion for attorneys' fees and expenses is denied.

### *REPORT AND RECOMMENDATION*

SCHENKIER, United States Magistrate Judge.

> Not everything that counts
> can be counted.
>
> Not everything that can
> be counted counts.
>
> *Albert Einstein*[1]

In this diversity action, removed from state court in May 2004, plaintiff, Carol

Billie Oshana,[2] alleged individual and class claims for unjust enrichment and violation of the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA"), 815 ILCS 505/10a(c). In this Court, plaintiff made clear that on her individual and class claims, she sought monetary relief totaling in the "tens or hundreds of millions of dollars" (Am.Compl.¶¶ 14, 32, 34, 61(B), 67(B)).

However, by July 2005, rulings on motions for remand, class certification, and summary judgment had eliminated plaintiff's class claims, and had gutted plaintiff's damages claims (those rulings have now been affirmed on appeal. *Oshana v. Coca-Cola Co.*, 472 F.3d 506 (7th Cir.2006)). All that remained of plaintiff's case was Ms. Oshana's individual claims for unjust enrichment and violation of the ICFA. All parties agreed that the value of this individual claim was no more than $650.00. Thus, when defendant made an offer of judgment under Federal Rule of Civil Procedure 68 in the amount of $650.00, plus "reasonable costs and attorney's fees in an amount to be determined by the Court," Ms. Oshana accepted it.

Ms. Oshana then moved for an award of attorneys' fees and costs (doc. # 210). In that motion, which has been referred to this Court for a report and recommendation (doe. ## 216–17), Ms. Oshana seeks $948,69925 in fees and $151,810,52 in costs, for a total award of $1,100,509.77. According to plaintiff, this million dollar request—which the parties agree reflects the work of 19 lawyers from six different firms (Pl's Mot. at 20; Def's Resp, at 14)—is a reasonable award of fees and costs for the $650,00 recovery that was achieved.

We disagree. Ms. Oshana's three-figure recovery obtained in an offer of judgment does not provide the springboard for a seven-figure award of attorneys' fees and costs. "In the context of this litigation, the technical or *de minimis* nature of [plaintiff's] victory is readily apparent: [she] asked for a bundle and got a pittance." *Farrar v. Hobby*, 506 U.S. 103, 120, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) (O'Connor, J., concurring). When measured against the "tens or hundreds of millions of dollars" plaintiff sought, plaintiff's $650.00 recovery is "a Pyrrhic victory for which the reasonable fee is zero." *Id.* at 117, 113 S.Ct. 566.

Thus, this Court respectfully recommends that the district judge award plaintiff no attorneys' fees or costs for two reasons: (1) plaintiff's recovery is too *de minimis* to reasonably warrant any award; and (2) even if plaintiff's small recovery warranted an award, the $1.1 million in fees and costs plaintiff seeks is so far from reasonable, and reflects such over-reaching, that the reasonable award here is zero. The Court further recommends that the district judge decline to award plaintiff costs for two additional reasons: (1) expert fees are non-taxable costs that are not allowed by ICFA, and so they are not awardable; and (2) although taxable costs are allowed under ICFA, plaintiff waived her right to pursue such costs by failing to file her fee petition within 30 days, as required by Local Rule 54.1(a).

---

**1.** Quoted in "Working Minds: Quotations front Albert Einstein [1879–1955]" at http://www.working-minds.com/AEquotes.htm. *See also* http://www.heartquotes.net/Einstein.html (noting that this quote appeared on a sign in Mr. Einstein's office at Princeton).

**2.** The named plaintiff in this case originally was David Hahn. In the second amended complaint, Ms. Oshana was substituted for Mr. Hahn as the named plaintiff (doe.# 52). For the sake of simplicity, we will refer to plaintiff as Ms. Oshana throughout this report.

## I.

We begin by summarizing the relevant factual and procedural history of the litigation in this case. We do so by grouping the events we find most relevant by chronological order.

### A. Removal.

Plaintiff filed her state court complaint on March 12, 2004. In that complaint, plaintiff alleged that defendant committed fraud in connection with the disclosures it provided as to the artificial sweeteners used in Diet Coke sold from fountains (as opposed to cans or bottles). Plaintiff alleged that defendant failed to disclose that unlike Diet Coke sold in cans or bottles, which was sweetened solely with as required, fountain Diet Coke was sweetened with a blend of aspartame and saccharin. Plaintiff alleged that by concealing this information, defendant was able to sell fountain Diet Coke to those who would not buy a product containing saccharin.

Based on these assertions, plaintiff pled claims for unjust enrichment and violation of the ICFA on behalf of all persons in Illinois who purchased fountain Diet Coke as far back as 1984. The state court complaint expressly disclaimed that "individual damages" would exceed $75,000, the jurisdictional prerequisite for diversity jurisdiction. However, that statement in the complaint was not binding on plaintiff *Oshana*, 472 F.3d at 511, Thus, defendant promptly served oil plaintiff requests to admit designed to establish that plaintiff's total monetary recovery would not exceed $75,000. Defendant asked plaintiff to admit that she individually would not seek disgorgement of defendant's profits on sales of fountain Diet Coke to other Illinois consumers; that she would not seek attorneys' fees in excess of $75,000; that she would not seek punitive damages in excess

of $75,000; and that the total recovery she sought for disgorgement, punitive damages, and attorneys' fees would not exceed $75,000. Plaintiff refused to stipulate or admit to these limits on the recovery she would seek. *Oshana*, 472 F.3d at 509.

Had plaintiff admitted that she would not seek any recovery in excess of $75,000, the case would have remained in state court, But, when plaintiff failed to disavow any recovery in excess of $75,000, defendant removed the case to federal court on May 24, 2004.

On June 28, 2004, plaintiff filed a motion to remand (doe, # 18), Plaintiff asserted that remand was required because the case failed to meet the $75,000 jurisdictional amount—despite the fact that plaintiff had not availed herself of the opportunity to irrevocably say so while the case was pending in state court. The district judge denied the motion on July 16, 2004 (doe. # 24). Unsatisfied, plaintiff moved for reconsideration (doc. # 25), which the district judge denied on July 20, 2004 (doe. # 27).[3] The correctness of these rulings has been affirmed on appeal. *Oshana*, 472 F.3d at 510–13.

### B. Defendant's First Summary Judgment Motion.

One week after removal, defendant moved for summary judgment on the original complaint on statute of limitations grounds (doe.# 3). In that motion, defendant argued that the proposed class could not recover on alleged ICFA and unjust enrichment claims reaching back 20 years, to 1984, as asserted in the complaint. On July 30, 2004, the district judge granted defendant's summary judgment motion in part (doc. # 29). In her opinion, the district judge held that as the named repre-

---

**3.** We note that later in the case, plaintiff filed a renewed motion to remand (doc. # 178), which was rendered moot by plaintiff's acceptance of the offer of judgment (doc. # 190).

sentative of the punitive class, plaintiff was barred from recovering on any ICFA violations occurring prior to March 12, 2001, and on any unjust enrichment claims for violations occurring prior to March 12, 1999.

### C. Plaintiff's Amended Complaint.

Thus, by the end of July 2004, it was established that this case would proceed in federal court, and that its scope would be far narrower than plaintiff originally intended: plaintiff could not seek relief reaching back 20 years, to 1984, but only to 1999 (for the unjust enrichment claim) and 2001 (for the ICFA claim). Thereafter, on September 7, 2004, plaintiff filed an amended complaint reflecting this narrower period for relief. In that amended pleading, plaintiff continued to assert both the ICFA and unjust enrichment claims on both an individual and a class-wide basis. Plaintiff (then, David Hahn) claimed $1,000,00 in individual damages.

Significantly, in that amended complaint plaintiff expressly alleged the expansive disgorgement remedy that plaintiff had refused to disavow while the case was pending in state court. Plaintiff specifically alleged an entitlement to complete disgorgement of defendant's profits on sales of Diet Coke in Illinois, both individually and on behalf of the class. The amended complaint asserted that the disgorgement remedy would total, individually and as a class, in the "tens or hundreds of millions of dollars" (*Id.*, ¶¶ 14, 32, 34, 61(B), 67(B)).

On September 29, 2004, plaintiffs filed a second amended complaint substituting Ms. Oshana as the named class representative (doc. # 52). In the second amended complaint, Ms. Oshana made a reduced demand for individual damages in the amount of $650.00 (Pl.'s Ex. 4, p. 3; Ex. 5). However, for her disgorgement remedy, whether individually or as a class, Ms. Oshana continued to claim "tens or hun-

dreds of millions of dollars" (Sec.Am. Compl.¶¶ 32, 34, 61(B), 67(B)); *see also Oshana*, 472 F.3d at 510.

### D. Plaintiff's Class Certification Motion.

On September 20, 2004, plaintiff filed a motion for class certification (doe, # 50). On January 14, 2005, the district judge denied that motion (doe.# 85). Plaintiff moved for reconsideration (doc. # 96), which was denied on March 16, 2005 (doe. # 129). Plaintiff then sought interlocutory appeal of the denial of class certification, which was denied by the Seventh Circuit on May 19, 2005 (Def.'s Resp., Ex. H).

### E. Defendant's Second Summary Judgment Motion.

On April 20, 2005, defendant filed a motion for summary judgment on the second amended complaint (doe.# 135). In that motion, defendant argued, among other things, that plaintiff could not obtain a disgorgement remedy of any of defendant's profits beyond those attributable to sales of Diet Coke to plaintiff Put another way, defendant argued that plaintiff could not circumvent the denial of class certification by seeking what would amount to class-wide disgorgement, totaling in the "tens or hundreds of millions of dollars," based on Ms. Oshana's individual $650.00 claim. During briefing on this motion, plaintiff reaffirmed that she indeed sought this broad disgorgement remedy in her individual capacity. On July 13, 2005, the district judge granted in part and denied in part Coke's motion for summary judgment. Importantly for our discussion, the district judge held that plaintiff could not seek disgorgement remedies for injuries allegedly suffered by other consumers (doe. # 176: Mem. Op. and Order, 17–22).

After this second summary judgment ruling, plaintiff's second amended com-

plaint was reduced to two individual claims by Ms. Oshana, and individual damages limited to sales by defendant to Ms. Oshana—which plaintiff alleged did not exceed $650.00. At this time, plaintiff did not broach settlement with Coke. Instead, on July 18, 2005, plaintiff filed a motion to reconsider the ruling as defendant's second summary judgment, and renewed her motion to remand (doc. # 177).[4]

## F. Defendant's Rule 68 Offer of Judgment.

In the face of looming dates for filing the pretrial order (August 3, 2005) and trial (September 1, 2005), on July 25, 2005, defendant made a Rule 68 offer of judgment:

> Defendant The Coca–Cola Company ("Coca–Cola") hereby offers to allow judgment to be taken against it in this action by Plaintiff Carol Billie Oshana in the amount of $650, plus, in addition thereto, reasonable costs and attorney's fees in an amount to be determined by the Court.

(Def.'s Ex, K, Tab A). In making that offer, defendant expressly disclaimed any admission of liability and, in its cover letter accompanying the offer, defendant reserved its right to "object to the reasonableness of any attorneys' fees requested by plaintiff and/or her counsel" (*Id.*). While that offer was pending, on July 28, 2005, defendant also filed a motion to dismiss (doc. # 184).

Thereafter, on August 3, 2005, plaintiff accepted the Rule 68 offer of judgment, reserving the right to appeal the issues of jurisdiction and the denial of class certification (doc. # 189). The district judge entered judgment based on the acceptance of the Rule 68 offer (doc. # 191), and deemed moot plaintiffs motions for reconsideration and renew motion for remand, and defendant's motion to dismiss.

## G. Appeal.

On September 1, 2005, plaintiff filed a notice of appeal of the district judge's rulings on jurisdiction and class certification (doe.# 196). The case was argued on March 29, 2006, and the Seventh Circuit issued its opinion on December 26, 2006. The Seventh Circuit held that removal of the original complaint from state court to federal court was proper because, despite the express statement in the original complaint that plaintiff did not individually seek damages over $75,000.00, she refused to admit or stipulate that her total monetary recovery would not exceed that amount. The Seventh Circuit pointedly observed that it would be unjust to allow plaintiff to "benefit from playing a cat-and-mouse game, purporting to disclaim damages in excess of $75,000 but refusing to admit or stipulate that her damages will not exceed that amount." *Oshana,* 472 F.3d at 512. The appeals court also upheld the denial of class certification, hold-

---

4. Although not central to our recommendation, we note that the plaintiff's renewed—really, her third—motion to remand was frivolous. *First,* a district court does not lose diversity jurisdiction simply because of subsequent developments that might affect diversity of the parties or jurisdictional amount. *Oshana,* 472 F.3d at 510–11, 513 (citing *BEM I, L.L.C. v. Anthropologie, Inc.,* 301 F.3d 548, 552 (7th Cir.2002)). *Second,* even if diversity jurisdiction could be lost by post-removal events, the jurisdictional amount of $75,000 would not be threatened if, as plaintiff now claims, she was, and is still, entitled to $650.00 in damages plus over $1.1 million in fees and costs. The motion to remand made no mention of plaintiff's attorneys' fees claim in discussing the jurisdictional amount, even though fees are relevant to that calculation. *Louque v. Allstate Ins. Co.* 314 F.3d 776, 782 (5th Cir.2002) (in case where underlying statute provided award of fees to successful class, district court correctly included potential attorneys' fees in determining whether jurisdictional amount of $75,000 was met).

ing that the proposed class was not sufficiently identifiable or definite, and that Ms. Oshana's claim was not sufficiently typical to qualify for class certification. *Id.* at 515.

### H. Plaintiff's Motion for Fees and Costs.

During the pendency of the appeal, plaintiff filed her motion for attorneys' fees and costs (doc.# 210). As we have noted, the motion seeks $948,699.25 in attorneys' fees and $151,810.52 in costs, for a total of $1,100,509.77. The request for fees represents 2,581.90 hours of work (based on the time records submitted) performed by 19 attorneys from six firms. Plaintiff says that its fee request reflects a discount of some $200,000 in the fees actually incurred, which plaintiff says she has eliminated from the request on the ground that those fees related to class certification issues. Plaintiff claims that this request is reasonable, and that defendant only has itself to blame for the magnitude of the fees and costs incurred.

By agreement of the parties, we stayed consideration of the motion during the pendency of the appeal. With the appeal now decided, we turn to the request for fees and costs.

### II.

We begin our discussion with a brief summary of the legal principles governing the award of fees and costs where there has been a Rule 68 offer of judgment in the context of an underlying fee-shifting statute, such as in the case here where plaintiff pursued a claim under the ICFA. Rule 68 provides, in relevant part:

At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money or property or to the

effect specified in the offer, with costs then accrued....

Fed.R.Civ.P. 68.

"The plain purpose of Rule 68 is to encourage settlement and avoid litigation[,]" *Marek v. Chesny,* 473 U.S. 1, 5, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985), in cases where the "final probable outcome is not more favorable than defendant's offer." *Webb v. James,* 147 F.3d 617, 620 (7th Cir.1998) (citing *Grosvenor v. Brienen,* 801 F.2d 944, 945 (7th Cir.1986)). "[I]n general, courts use contract principles to interpret offers of judgment." *Webb,* 147 F.3d at 620. But, where there is an underlying fee-shifting statute, the Rule 68 offer is interpreted in light of that statute, particularly with regard to what it specifies the term "costs" includes. *Id.* (citing *Marek* 473 U.S. at 9, 105 S.Ct. 3012) ("Rule 68 does not come with a definition of costs; rather, it incorporates the definition of costs that otherwise applies to the case"). *See also Fisher v. Kelly,* 105 F.3d 350, 352 (7th Cir.1997) ("[w]hen the term 'costs' is used in an offer of judgment, it is read to include all costs awardable under the relevant substantive statute").

The fee-shifting statute at issue, the ICFA, states in relevant part:

... in any action brought by a person under this Section, the Court may ... award, in addition to the relief provided in this Section, reasonable attorney's fees and costs to the prevailing party.

*See* 815 ILCS 505/10a(c) (West 2006). Based on this language, the ICFA is interpreted as a "fee-shifting" statute when the plaintiff "prevails" by obtaining a damage award and a judgment of liability against the defendant on the claims asserted. *See, e.g., Allergy Asthma Technology, Ltd. v. I Can Breathe, Inc.,* 195 F.Supp.2d 1059 (N.D.Ill.2002) (fees awarded under ICFA). Where a court determines that a party has prevailed on an ICFA claim, the court has discretion in deciding whether to award

fees, and how much those fees should be. *Haimberg v. R & M Aviation, Inc.,* 5 Fed.Appx. 543 (7th Cir.2001). *See also Falcon Assoc., Inc. v. Cox,* 298 Ill.App.3d 652, 232 Ill.Dec. 756, 699 N.E.2d 203, 209 (1998), rehearing denied, appeal denied, 182 Ill.2d 549, 236 Ill.Dec. 669, 707 N.E.2d 1239.

In this case, defendant has conceded prevailing party status for purposes of the Rule 68 offer of judgment, and so we need not dwell on that point. Instead, the relevant question raised by defendant is whether plaintiff, as a prevailing party on her individual ICFA claim with a judgment of $650.00, is entitled to obtain a fee award. That question is inextricably linked with the question of "reasonableness" both in terms of whether it is reasonable to award fees *at all,* as well as what a "reasonable" fee amounts to in comparison with the damage award obtained. We address these questions below.

### III.

After careful consideration of the parties' arguments on the fee issue, this Court finds that plaintiff's actual recovery of $650.00 is too small when compared to the "tens or hundreds of millions of dollars" she sought to recover to warrant any award of fees. In reaching this conclusion, we assume that plaintiff has accurately counted the 2,581.90 hours spent by her 19 attorneys from six law firms, and correctly calculated the fee bill that results from applying their respective billing rates. But, as Einstein trenchantly observed, "[n]ot everything that can be counted counts."

The fact that plaintiff recovered $650.00 on her individual ICFA claim by accepting an offer of judgment merely gives plaintiff the opportunity to recover fees. Before plaintiff in fact can recover fees, she must show that an award of fees would be appropriate. The Seventh Circuit has provided guidance on the question of whether a prevailing party is entitled to an award of fees. In *Fisher v. Kelly,* 105 F.3d 350, 352 (7th Cir.1997), the Seventh Circuit held that "[e]ven if plaintiff is a prevailing party, the district court may deny attorney's fees—on the ground that no amount of fees would be reasonable—if plaintiff's recovery is merely technical or *de minimis.*" The appeals court explained that "[t]his circuit has adopted a three-factor test to determine if relief is merely technical or *de minimis:* 1) the difference between the judgment recovered and the recovery sought; 2) the significance of the legal issue on which the plaintiff prevailed; and, 3) the public purpose served by the litigation." *Fisher,* 105 F.3d at 353. While each factor must be weighed together to determine whether a recovery is *de minimis* or nominal, the most important factor is the first one: the difference between the judgment recovered and the recovery sought. *Cartwright v. Stamper,* 7 F.3d 106, 109–110 (7th Cir.1993). We discuss each factor *seriatim.*

### A.

In this case, the first factor weighs heavily against any award of fees. The difference between the judgment plaintiff recovered and the recovery she sought is, to say the least, vast by any measure one fairly may select. Plaintiff sought a recovery (both individually and on a class basis) of tens or hundreds of millions of dollars, A $650.00 recovery thus is only .0065 percent of the low end of what plaintiff sought ($10 million), and .00065 percent of the higher end of what she sought ($100 million).

With apologies to Disraeli, these statistics do not lie.[5] They show beyond ques-

---

**5.** In *Autobiography of Mark Twain* (1924), Mr.     Twain attributes to Benjamin Disraeli the fol-

tion that plaintiff's recovery is the very definition of *de minimis*.

Even where a recovery after trial was four percent of the amount sought, the Seventh Circuit approved the denial of fees because the plaintiff was guilty of "overreaching," as shown by the fact that its $1,115,000 verdict was a "pittance" of the $25.6 million plaintiff asked the jury to award. *Bankcard America, Inc. v. Universal Bancard Systems*, 203 F.3d 477, 486 (7th Cir.2000). *See also Farrar v. Hobby*, 506 U.S. 103, 120, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) (O'Connor, J., concurring) (plaintiff asked for a "bundle" ($17 million) and got a "pittance" ($1.00)). In this case, plaintiff's recovery—at most .0065 percent of the amount she sought—is not even enough to be called a pittance. Thus, we feel justified in asking the proverbial rhetorical question: Need we say more? As for the first *Fisher* factor, we think not.

### B.

That brings us to the second factor identified in *Fisher*, namely, the significance of the legal issue on which plaintiff prevailed. To assess this factor, we must look at what the plaintiff originally claimed. At the outset, plaintiff sought to represent a class of people whom she claimed were defrauded by defendant's alleged campaign to keep quiet the fact that it used saccharin as a fountain ingredient in Diet Coke, while widely advertising the use of aspartame as the sole sugar substitute used in canned and bottled Diet Coke. This approach, alleged plaintiff, was misleading and deceptive because it caused her and others to believe that all Diet Coke was sweetened solely with aspartame. Because saccharin is believed by some to cause cancer, plaintiff alleged that she and others would not have purchased fountain Diet Coke if they had known that saccha-

rin was being used. Consequently, plaintiff alleged that defendant was unjustly enriched by profits from her purchases— purchases made while she was being allegedly defrauded in violation of ICFA.

In analyzing the significance of this legal issue on which plaintiff prevailed, we are instructed to consider "the extent the plaintiff[ ] succeeded on [her] theory of liability" rather than focusing on "the relief obtained." *See Cartwright*, 7 F.3d at 109–110 (citing *Farrar v. Hobby*, 506 U.S. 103, 120–21, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992)). Here, plaintiff did not succeed in establishing that her case properly could be brought on a class-wide basis. She did not succeed in establishing that her claims could reach back to 1984: they were instead cut off as of 1999 (on the unjust enrichment claim) and 2001 (on the ICFA claim). And, she did not succeed in establishing that, on her individual claims, she could recover profits that defendant made on sales to other persons: in other words, that she effectively could obtain a class-type recovery on her individual claims.

Thus, plaintiff failed to succeed on any legal issue of significance. All that plaintiff achieved was a recovery of $650.00 through an offer of judgment. And, even that judgment does not establish the liability of defendant as to Ms. Oshana's individual claim, as a judgment entered pursuant acceptance of Rule 68 offer only has the legal effect of a settlement. *Fletcher v. City of Fort Wayne*, 162 F.3d 975, 976–77 (7th Cir.1998). On these facts, the second *Fisher* factor weighs against an award of fees and costs.

### C.

The third *Fisher* factor asks us to consider the public purpose served by the success achieved by plaintiff. "This factor

lowing statement: "There are three kinds of

lies: lies, damned lies, and statistics."

principally relates to whether the victory vindicates important rights and deters future violations." *Cartwright,* 7 F.3d at 110. *See also Farrar,* 506 U.S. at 121, 113 S.Ct. 566. For example, a finding of punitive damages is strong evidence that the victory served an important public purpose. *Estate of Borst,* 979 F.2d at 517.

Here, however, we have no punitive damages award; certainly, this $650.00 offer of judgment has no deterrent value. Nor do we have a recovery by plaintiff of any non-monetary relief (such as an injunction or declaratory relief), or a finding of liability. And, we do not have any finding that there was actually fraud or deception by defendant, which would carry with it the public purpose of exposing misconduct to the light of public opinion. At most, we have an exceedingly small individual monetary settlement of what plaintiff claimed was a major, eight-to-nine figure class action case. That resolution carries with it the value that all settlements provide in terminating a ease and saving public resources that otherwise would be required for trial. But, that value falls far short of being sufficient to take a *de minimis* recovery and to transform it into the platform for an award of fees and costs. We therefore conclude that the third *Fisher* factor also weighs against an award of fees.

Therefore, in weighing the three factors set forth in *Fisher* and other cases in this Circuit, we find that Ms. Oshana's victory is so *de minimis* "that no amount of fees would be reasonable." *Fisher,* 105 F.3d at 352. For that reason, we respectfully recommend that plaintiff be awarded no attorneys' fees or costs.

## IV.

This same result can be reached by a different path: plaintiffs $1.1 million request for attorneys' fees and costs is so disproportionate to the $650.00 recovery she obtained, and reflects such over-reaching, that it warrants the complete denial of fees and costs.

Plaintiff's request for $1.1 million in fees and costs is 1,692 times that $650.00 recovery she obtained. The fee portion of the $1.1 million request—$948,699.35—alone is nearly 1,460 times the plaintiffs recovery. We recognize that the recovery obtained in a case does not create a ceiling on the amount of attorneys' fees that may be awarded under a fee-shifting statute. A fundamental purpose of fee-shifting statutes is to encourage lawyers to take on cases (such as consumer-rights cases) in which the recoveries generally are not large enough to attract legal representation in the private market. Thus, it is well-settled that fee awards in cases involving fee-shifting statutes may exceed the amount recovered. *See City of Riverside v. Rivera,* 477 U.S. 561, 576, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986) (in civil rights cases, reasonable fees need not be conditioned upon or proportionate to the amount of recovery); *Cange v. Stotler and Co.,* 913 F.2d 1204, 1211–12 (7th Cir.1990) (same observation in ICFA case).

However, that principle is not without limits. The Seventh Circuit has directed that a trial court must engage in "increased reflection before awarding attorney's fees that are large multiples of the damages recovered or multiples of the damages claimed." *Moriarty v. Svec,* 233 F.3d 955, 968 (7th Cir.2000). To assist the Court in considering this factor, we directed the parties to provide us with cases showing the largest multiples of attorneys' fees awarded to monetary recovery obtained. The largest ratio of fees to recovery that the parties (or we) found, at least in a case where there was no non-monetary relief to go along with the monetary recovery, occurred in *Estate of Borst v. O'Brien,* 979 F.2d 511 (7th Cir.1992), There, the Seventh Circuit affirmed a fee

award of $47,254.13 on a jury verdict of $500.00 in compensatory damages and $500.00 in punitive damages, for a total recovery of $1,000.00. That fee award was 47 times the recovery—a far cry from 1,460-to-1 ratio of attorneys' fees to recovery that plaintiff seeks here. There also were other factors present in *Estate of Borst* that justified so large a ratio of fees to recovery in that case, but which is missing here: in that case, there was a judicial determination of liability and a punitive damage award, both of which showed that public interest considerations were advanced. Here, there is neither.

In this case, the amount of attorneys' fees and costs is so disproportionate to Ms. Oshana's $650.00 recovery that a reasonable fee and cost award here is zero. No rational attorney would spend $1.1 million in fees and costs to advance an individual $650.00 claim—and, in our view, plaintiff's experienced and accomplished attorneys are quite rational. The reason the fee and cost bill in this case is so high is that until the bitter end, plaintiff's counsel made the conscious choice to litigated this case as far more than a single-plaintiff case for three-digit damages. Rather, plaintiff's counsel sought recovery of "tens or hundreds of millions of dollars" under a class action theory. When that theory was (twice) rebuffed by the district judge, plaintiff's counsel persisted in their attempt to recover tens or hundreds of millions of dollars on the theory that, as an individual plaintiff. Ms. Oshana was the conduit through which defendant could be required to disgorge all profits it obtained on sales of fountain Diet Coke to all consumers in Illinois going back to 1999 or 2001. That theory likewise was rebuffed by the district judge.

Plaintiff's numerous attorneys argue that their $1.1 million fee cost request is reasonable in part because it already trims $200,000 in additional time they devoted to their failed attempts to seek class certification. But, that argument misses the larger point that the entire scale of the case was driven by plaintiff's counsel's vision that this was an eight-to-nine figure case. That vision was reflected at the outset by plaintiff's refusal while in state court to admit that the value of this case did not exceed $75,000; it was reflected in the pitched battles plaintiff's counsel fought on the extensive discovery they sought in the case, which went far beyond Ms. Oshana's individual claims; and, it was reflected in plaintiff's desperate effort to retain the multi-million dollar recovery theory even after class certification was denied. Since plaintiff's counsel viewed this is as a big case, with a prospect for a large recovery, they litigated as though it was a big case. That much is evident from the fact that plaintiff had 19 attorneys from six different firms who worked on the case. It does not take that kind of army of lawyers to capably prosecute individual claims for unjust enrichment and violation of the ICFA.

Plaintiff's counsel's vision of this case proved badly mistaken. It was not a class case, and it was not a multi-million dollar case—it was a simple, individual plaintiff $650.00 case. In light of the rulings by the district judge and the appeals court, it is hard to avoid the conclusion that plaintiff's counsel greatly over-reached here. They overreached in litigating this as a big case and then, having lost the big case, they overreached in seeking the kind of fee award one would expect to see only had they won the big case.

By any measure, plaintiffs $1.1 million request is grossly excessive. To pick just one measure, we compare plaintiffs fee request here (setting aside costs) with the 47-to-1 ratio of fees to recovery affirmed in *Estate of Borst*, which was the largest ratio of fees to recovery that we found. If we applied that ratio to plaintiff's recovery of $650.00 here, the fee award would be

$30,550. Plaintiff's counsel requests a fee award of $948,699.25, which is more than 30 times the highest ratio of fees to recovery that we have found. In our view, plaintiff's request is so excessive that it is beyond salvaging. Thus, even if some fee award might be appropriate under *Fisher*, we would find that plaintiff's counsel had forfeited any right to an award by the unreasonableness of their request.

### A.

Plaintiffs counsel argue that they arc entitled to such a large fee award, despite the small monetary recovery plaintiff obtained by accepting defendant's Rule 68 offer of judgment, because the large expenditure of time was forced upon plaintiff by defendant's actions. Plaintiff's counsel criticized defendant for removing this case to federal court, and then litigating as though this was big case even though defendant "has always been aware of the modest size of [p]laintiff's individual damages" (Pl.'s Reply at 1). For a number of reasons, this argument fails to move us off the starting block of zero fees.

*First*, plaintiff could have avoided removal if, while the case was in state court, plaintiff had disavowed any recovery in excess of $75,000. Plaintiff failed to do so, perhaps because she sought to have her cake and eat it too. Perhaps—as the Seventh Circuit hinted, *Oshana*, 472 F.3d at 512—plaintiff sought to preserve her ability both to remain in state court and to pursue this as a big case by suggesting, but not squarely committing to, a disavowal of any recovery in excess of $75,000. If so, that approach plainly failed to work, as plaintiff wound up in federal court. But that does not alter the fact that, whether in state or federal court, it was plaintiffs choice to pursue this case as a multimillion dollar enterprise. Plaintiff, who was the master of her pleadings, cannot blame defendant for the fact that this case was plead—and then litigated—as a big case.

*Second*, once the case was removed to federal court and the remand denied, plaintiff affirmatively chose to amend the complaint to confirm that she, indeed, intended to pursue this as a big case. Plaintiff specifically sought complete disgorgement of defendant's allegedly ill-gotten pro fits from the sale of fountain Diet Coke to all Illinois consumers, both on behalf of the class and individually. Plaintiff specifically alleged that this disgorgement would run in the "tens or hundreds of millions of dollars." If plaintiff intended to litigate this as a simple one-plaintiff, $650.00 case, she could have done so whether in federal or state court. By her amended complaint in this court, plaintiff left no room for doubt that she intended to pursue this as a big case.

*Third*, plaintiff in fact litigated this as a big case, fighting every issue to the hilt. Plaintiff sought and obtained extensive discovery that was commensurate with a big case. For example, plaintiff filed four discovery motions to compel defendant to produce documents and information that plaintiff affirmatively sought to prove her big case. She sought remand three times; she moved to reconsider then denial of class certification and, when that failed, she unsuccessfully sought an interlocutory appeal on class certification; and, she moved to reconsider adverse summary judgment rulings. We make these observations to point out that plaintiff's counsel affirmatively pursued this case as a large one; she was not merely a passenger in big-case litigation driven by defendant.

### B.

Plaintiff also says that she incurred substantial attorneys' fees and costs because defendant refused to broach settlement early in the case, failed to seek summary judgment on the disgorgement issue earlier in the case (*e.g.*, in the first summary

judgment motion prior to the class certification decision or right after the class certification decision), and, then, after obtaining summary judgment on the disgorgement issue, waited 12 days to make the offer of judgment, None of these arguments salvages plaintiff's request.

*First,* as for plaintiff's claim that defendant failed to raise settlement early in the case, we note that plaintiff offers no evidence that she tried to settle the case early on, but was rebuffed by defendant. To the contrary, we find it difficult to believe that plaintiff would have settled this case early on as a small case, when she filed the case as a class action and vigorously fought this case as a big one. Even after class certification was denied, plaintiff continued to fight this as a big case by urging that Ms. Oshana individually could recover a complete disgorgement for all Illinois consumers. Indeed, after the second summary judgment motion was granted, eliminating plaintiff's complete disgorgement theory, plaintiff herself never initiated settlement talks but instead sought reconsideration of summary judgment and again sought remand.

*Second,* plaintiff cannot blame defendant for the timing of its motion for summary judgment on plaintiff's claim that she could recover class-wide disgorgement on her individual claims. It was plaintiff who decided to assert this claim. We will not criticize defendant for waiting until after class certification was denied—and this alternative disgorgement theory thus emerged as significant—to seek summary judgment on it. Moreover, plaintiffs counsel should not have needed defendant (or the trial and appeals court) to tell her about the futility of this theory. It is plaintiff's failure to recognize the lack of merit in that theory, and not the timing of the motion attacking it, that was the problem.

*Third,* the fact that defendant waited 12 days to make an offer of judgment does not seem unduly long. We note that it took plaintiff nine days to respond to the offer. In any event, the timing of defendant's Rule 68 offer is irrelevant to whether plaintiffs counsel overworked the case. *See Connolly v. National School Bus Service, Inc.,* 177 F.3d 593, 594, 598 (7th Cir. 1999).

In sum, plaintiff was not a victim of defendant's machinations. Plaintiff was in control of, the shape of this litigation from the outset; plaintiff chose how to plead and pursue this case. Plaintiff consciously tried to make this a big case, seeking disgorgement of tens or hundreds of millions of dollars in profits when she could have made it a small case (and stayed in state court) from the outset. However that choice would have required her and her attorneys to disavow a claim of any monetary recovery (including fees) in excess of $75,000.00. Plaintiffs side was not willing to do that at the time of removal, or at any other time during this case. Plaintiff cannot complain that defendant treated an eight-to-nine figure claim seriously, and defended the claim vigorously,

That defense was successful. Plaintiff lost on every theory she pursued to make this a big case. She cannot now use the offer of judgment on a single $650.00 claim as the basis to recover fees as though she prevailed on the big case she alleged. As explained above, we think this ease falls into the *Farrar* category of cases, where plaintiffs victory is merely Pyrrhic and thus the reasonable fee is zero, *Farrar,* 506 U.S. at 117, 113 S.Ct. 566.[6]

---

6. The only rationale for any fee award at all is that plaintiff is "technically" a prevailing party, by concession of defendant, and that her entire individual claim for damages was re-

covered. Under that scenario, if any fees and costs were reasonable (and we think none are), it would not be anywhere near the $1.1

## V.

Our discussion above explains why we do not recommend that plaintiff be awarded fees or costs. But, even if an award of fees was appropriate, there are additional reasons why costs should not be awarded. The costs sought by plaintiff in this case fall into both non-taxable and taxable costs. We address each in turn.

## A.

The issue of whether to award non-taxable costs is easily resolved. The Seventh Circuit has held that costs do not include expert fees, unless the legislature expressly provided for such costs in the underlying statute. *See T.D. v. LaGrange School Dist. No. 102*, 349 F.3d 469, 482 (7th Cir. 2003); *Uphoff v. Elegant Bath Ltd.*, 176 F.3d 399 (7th Cir.1999). As one district court put it: "The law in the Seventh Circuit is clear, that for experts not appointed by the Court, the prevailing party may only recover the statutory amount prescribed in [the statute] and not any additional expert fees unless permitted by a specific provision of a fee shifting statute." *NLFC, Inc. v. Devcom Mid-America*, 916 F.Supp. 751, 764 (N.D.Ill.1996). The ICFA does not explicitly provide for an award of expert costs. Those costs are not awardable, and for that additional reason we recommend that the district judge deny them.[7]

## B.

In general, the determination of whether taxable costs may be awarded under Rule 68 turns on what the underlying fee-shifting statute has to say about it. Thus, although the Rule 68 offer of judgment in this case explicitly provides plaintiff with "reasonable" attorneys' fees and costs, the legal question is whether those costs are allowed under ICFA. The answer to that question is that taxable costs are allowed under ICFA. See 815 ILCS 505/10a(e). However, that answer does not end the inquiry. Local Rule 54.1(a) of the Northern District of Illinois requires a plaintiff to file a bill of costs within 30 days of judgment:

Local Rule 54.1(a) states:

**LR 54.1. Taxation of Costs.**

**(A) Time to File.** Within 30 days of the entry of judgment allowing costs, the prevailing party shall file a bill of costs with the clerk and serve a copy of the bill on each adverse party. If the bill of costs is not filed within 30 days, costs other than those of the clerk, taxable pursuant to 28 U.S.C. § 1920, shall be deemed waived. The court, on motion filed within the time provided for the filing of the bill of costs, may extend the time for filing the bill.

Taxable costs (other than clerk's costs) are waived if a bill of costs is not filed within 30 days of entry of judgment.

Here, plaintiff concedes that she did not file her bill of costs within this 30–day time

---

million plaintiff seeks. Even applying the 47–to–1 multiple used in *Estate of Borst*, the fee here would be at most $30,550.00 as compared with the $948,699.25 sought That amount would still be far too high, since the 47–to–1 multiple was reached in a case where a jury verdict was obtained on liability and punitive damages were awarded; in this case there is no liability verdict and no punitive damages.

7. Plaintiff's citation to *Uniroyal Goodrich Tire Co. v. Mutual Trading Corp.*, 63 F.3d 516 (7th Cir.1995), does not support plaintiff's position that such fees are awardable. In that case, it appears that the Seventh Circuit awarded fees under the RICO statute, not the ICFA statute. Moreover, *T.D.* and *Uphoff* are more recent and more explicit pronouncements of the Seventh Circuit's views on this matter, and we recommend that the district court follow the holdings in those cases.

frame. Plaintiff argues that she was not subject to the Local Rule 54.1 waiver because she seeks costs under ICFA, which provides fee shifting that includes costs, To support her position, plaintiff cites *NLFC*, in which the court said that "where cost-shifting is expressly authorized by statute, courts have consistently held that the traditional limitations of Rule 54, and corresponding Local Rule 45.... do not apply." *NLFC, Inc. v. Devcom Mid-America,* 916 F.Supp. 751, 762 (N.D.Ill. 1996). However, in a more recent case, *Helms v. Local 705 Intern. Broth. of Teamsters Pension Plan,* No. 97 C 4788, 2002 WL 356516 (N.D.Ill.2002), another judge from this district upheld application of Local Rule 54, even in the face of a fee shifting statute (ERISA), to bar plaintiff from filing an untimely bill of costs. We agree with the point of view expressed in *Helms,* and we therefore recommend that the district court find that plaintiff here has waived her right to file a bill of costs for taxable costs and expenses by her failure to comply with Local Rule 54.1(a).

### CONCLUSION

For the reasons given above, we respectfully recommend that the district judge deny plaintiffs motion for attorneys' fees and costs (doe.# 210). Specific written objections to this report and recommendation may be served and filed within 10 business days from the date that this order is served. Fed.R.Civ.P. 72(a). Failure to file objections with the district court within the specified time will result in a waiver of the right to appeal all findings, factual and legal, made by this Court in the report and recommendation. *See Video Views, Inc. v. Studio 21, Ltd.,* 797 F.2d 538, 539 (7th Cir.1986).