In the
United States Court of Appeals
For the Seventh Circuit

No. 00-2159

Rex A. Workman,

Plaintiff-Appellant,

v.

United Parcel Service, Inc.,

Defendant-Appellee.


Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 3:99-CV-0339-AS--Allen Sharp, Judge.


Argued November 15, 2000--Decided December 12, 2000


 Before Posner, Easterbrook, and Kanne, Circuit Judges.

 Posner, Circuit Judge.  This is a diversity suit, governed by Indiana law and resolved in favor of the defendant on summary judgment, for breach of contract and promissory estoppel. The plaintiff is an employee of UPS who claims that the company made a binding promise not to demote him without just cause and broke its promise. A threshold question is whether the stakes exceed (more precisely, whether it is legally possible that they exceed, The Barbers, Hairstyling for Men & Women, Inc. v. Bishop, 132 F.3d 1203, 1205 (7th Cir. 1997)) $75,000; if they do not, the district court had no jurisdiction. 28 U.S.C. sec. 1332(a). The case had been removed to federal court from state court, and so the defendant had the burden of alleging and if necessary proving that the case was indeed within the federal diversity jurisdiction. St. Paul Reinsurance Co. v. Greenberg, 134 F.3d 1250, 1253-54 (5th Cir. 1998). The plaintiff contested the allegation, precipitating an evidentiary hearing that persuaded the district court that there was jurisdiction. On appeal the plaintiff repeats in its jurisdictional statement, but does not argue, that the district court lacked jurisdiction.

 Although challenges to the subject-matter jurisdiction of a federal court are conventionally said not to be waivable, so that such a challenge can be mounted for the first

time on appeal and can indeed be made by the court itself, it is not true that waiver or forfeiture plays no role in determinations of jurisdiction. If the district court makes a factual determination that supports jurisdiction and the party opposing jurisdiction does not challenge the finding, or, as here, does not press the challenge (for, as we said, the plaintiff has made no attempt to support his claim that the requirement of a minimum amount in controversy has not been met), he forfeits his objection to the finding, though not to the inference of jurisdiction drawn from the finding. Prizevoits v. Indiana Bell Tel. Co., 76 F.3d 132, 134-35 (7th Cir. 1996); cf. United States v. County of Cook, 167 F.3d 381, 388 (7th Cir. 1999). Any other rule would impose an undue burden on the appellate court by requiring it to review factual determinations without any help from the challenger. Of course if the court has reason to think there is no jurisdiction, maybe because the parties are colluding to conceal the absence of jurisdiction from the court, then, as we held in the Prizevoits case, 76 F.3d at 134-35, it can order a further evidentiary hearing. But it is not required to do so when there is no basis for thinking that the district court's finding may be incorrect. And a bare assertion does not create such a basis.

 This rule should not impose a hardship on the plaintiff who has a modest claim that he does not want to be forced to litigate in federal court. He can avoid that fate, in a case in which only monetary relief is sought, simply by stipulating that he is not seeking and will neither demand nor accept any recovery in excess of $75,000 exclusive of costs and interest, In re Shell Oil Co., 970 F.2d 355 (7th Cir. 1992) (per curiam), though the stipulation must be made at the time the suit is filed since jurisdiction is determined as of then and not later. Id.; Chase v. Shop 'N Save Warehouse Foods, Inc., 110 F.3d 424, 430 (7th Cir. 1997); St. Paul Reinsurance Co. v. Greenberg, supra, 134 F.3d at 1253-54. If he doesn't make such a stipulation, the inference arises that he thinks his claim may be worth more.
 On the merits, the plaintiff relies for both his contractual claim and his claim of promissory estoppel on a handbook that UPS gives its employees explaining its employment policies. Under the law of many states, such a handbook can create a binding contract if it contains clear promissory language that makes the handbook an offer that the employee accepts by continuing to work after receiving it. See, e.g., Duldulao v. St. Mary of Nazareth Hospital Center, 505 N.E.2d 314, 318 (Ill. 1987); Snow v. Ridgeview Medical Center, 128 F.3d 1201, 1208 (8th Cir. 1997)

(Minnesota law); Varrallo v. Hammond, Inc., 94 F.3d 842, 845 (3d Cir. 1996) (New Jersey law). Indiana has yet to decide whether to follow these states. Orr v. Westminster Village, 689 N.E.2d 712, 720 (Ind. 1997). We need not speculate about whether it will. Even if we assume it will, and even if the UPS handbook could, as we doubt, be interpreted to contain a clear promise not to demote an employee except for cause, the plaintiff's contractual claim is extinguished by the statement in the handbook that "this Policy Book is not a contract of employment and does not affect your rights as an employee of UPS."

Such a disclaimer, if clear and forthright, as it is here (in contrast to cases such as United States ex rel. Yesudian v. Howard University, 153 F.3d 731, 747 (D.C. Cir. 1998)), is a complete defense to a suit for breach of contract based on an employee handbook. Freeman v. Chicago Park District, 189 F.3d 613, 617 (7th Cir. 1999); Doe v. First National Bank, 865 F.2d 864, 873 (7th Cir. 1989); Berg v. Norand Corp., 169 F.3d 1140, 1146 (8th Cir. 1999); Zenor v. El Paso Healthcare System, Ltd., 176 F.3d 847, 863 (5th Cir. 1999); Eldridge v. Evangelical Lutheran Good Samaritan Society, 417 N.W.2d 797, 800 (N. Dak. 1987); Davis v. Times Mirror Magazines, Inc., 697 N.E.2d 380, 388 (Ill. App. 1999). Raymond v. International Business Machines Corp., 148 F.3d 63, 67 (2d Cir. 1998), seems to reach an opposite result, but its abbreviated discussion leaves us in doubt whether the court meant anything more than that the effect of a disclaimer can be canceled by evidence not presented here that casts the disclaimer's meaning or intended effect into doubt. Since an employer is under no legal obligation to furnish its employees with a statement of its employment policies, we cannot think of a basis for holding that any statement it does give them has to be legally binding. The only effect of such a rule would be to extinguish employee handbooks.

We are mindful of cases that hold, contrary to the cases we cited in the preceding paragraph, that it is not enough for the handbook to disclaim creating an employment contract; it must state in addition that the employee can be terminated at the will of the employer. Russell v. Board of County Comm'rs, 952 P.2d 492, 503 (Okla. 1997); Jones v. Central Peninsula General Hospital, 779 P.2d 783, 787-88 (Alaska 1989); Preston v. Claridge Hotel & Casino, Ltd., 555 A.2d 12, 15 (N.J. App. 1989); Perman v. Arcventures, Inc., 554 N.E.2d 982, 987 (Ill. App. 1990). Perman, however, is contrary to another Illinois intermediate appellate case, Davis v. Times Mirror Magazines, Inc., supra. The state's supreme court has yet to address the issue,

although Doyle v. Holy Cross Hospital, 708 N.E.2d 1140, 1145-46 (Ill. 1999), might be read to imply that a disclaimer which appears in the original handbook that the employee received, rather than being added later, is effective to bar the employee's claim of breach of contract.

The decisions that refuse to give effect to the short-form disclaimer strike us as paternalistic in the extreme. Employment at will is the norm in the United States. An employee therefore has no reason to presume that he has tenure, and a disclaimer that a handbook creates a contract is a clear statement that if he is fired he can't sue for breach of contract. What more is needed? But there was more here, enough more perhaps to satisfy the courts that rendered the decisions we just cited: the statement that the handbook gives the employee no rights.

One might wonder what function an employee handbook serves if it does not create enforceable obligations. The answer is that it conveys useful information to the employee. And more--for to the extent that it does contain promises, even if not legally binding ones, it places the employer under a moral obligation, or more crassly gives him a reputational incentive, to honor those promises. Such promises may not be worth as much to the promisee as a promise that the law enforces, but they are worth more than nothing, and it is nothing that the employee can expect if employers must choose between nothing and giving up employment at will.

A disclaimer that is effective against a claim of breach of contract is also effective, we believe, against a claim of promissory estoppel. Thacker v. Menard, Inc., 105 F.3d 382, 385 (7th Cir. 1996); Orback v. Hewlett-Packard Co., 97 F.3d 429, 433 (10th Cir. 1996); Bouwens v. Centrilift, 974 P.2d 941, 947 (Wyo. 1999). (The last two cases are both handbook cases.) The function of the doctrine of promissory estoppel is to provide an alternative basis to consideration for making promises legally enforceable. Consolidation Services, Inc. v. Keybank Nat'l Ass'n, 185 F.3d 817, 822 (7th Cir. 1999). A promise can be legally binding because it is supported by consideration or because it induces reasonable reliance, but in either case the promisor is free by a suitable disclaimer to deny any legally binding effect to the promise. To put this differently, consideration or reliance is a necessary but not a sufficient condition of the enforceability of a promise. Another necessary condition is that the promise be worded consistently with its being intended to be enforceable. Bouwens v. Centrilift, supra, 974 P.2d at 947; Phipps v. IASD Health Services

Corp., 558 N.W.2d 198, 204 (Iowa 1997). Because of the disclaimer, that condition was not fulfilled in this case.

Affirmed.