In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 05-3640

CAROL B. OSHANA,

*Plaintiff-Appellant,*

*v.*

COCA-COLA COMPANY,
a Delaware corporation,

*Defendant-Appellee.*

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 04 C 3596—**Suzanne B. Conlon**, *Judge.*

———————

ARGUED MARCH 29, 2006—DECIDED DECEMBER 29, 2006

———————


Before BAUER, KANNE, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* This putative class action alleges the Coca-Cola Company ("Coke") deceived Diet Coke® consumers in Illinois by failing to disclose that fountain Diet Coke and bottled Diet Coke are not the same product. Fountain Diet Coke contains a blend of the sweeteners aspartame and saccharin; bottled Diet Coke is sweetened only with aspartame. The plaintiff's lawyers, on behalf of a prior named class representative and a class of all Illinois purchasers of fountain Diet Coke from March 12, 1999 forward, initially filed the lawsuit in Illinois state court alleging that Coke violated the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA") and was

unjustly enriched. Coke removed the lawsuit to federal court, defeated class certification, and eventually offered a substituted named plaintiff, Carol Oshana, a judgment of $650, which she accepted. Oshana reserved the right to challenge on appeal the district court's jurisdiction and the order denying class certification. We affirm.

## I. Background

Oshana filed this lawsuit in Illinois state court alleging Coke tricked consumers into believing that fountain Diet Coke and bottled Diet Coke have the same ingredients.[1] In fact, bottled Diet Coke is sweetened with aspartame, while fountain Diet Coke is sweetened with a mixture of aspartame and saccharin. The additional ingredient in fountain Diet Coke apparently addresses concerns about the staying power of aspartame as a sweetener in fountain syrup. Oshana complained, in relevant part, that Coke began advertising in 1984 that Diet Coke would be sweetened with 100% NutraSweet® brand aspartame, leading consumers to believe that all forms of Diet Coke would follow that formula, even though fountain Diet Coke continued to use saccharin.

Consistent with Illinois practice, Oshana did not claim an amount of damages in her complaint. She did, however, disclaim individual damages over $75,000. She sought compensatory damages, disgorgement of Coke's profits from the sale of fountain Diet Coke in Illinois, attorneys' fees and costs, and any other relief the court saw fit to grant.

---

[1] Oshana was not the original named plaintiff in this lawsuit. David Hahn, the initial plaintiff and proposed class representative, voluntarily withdrew after moving for class certification, and Oshana was substituted. Because Oshana is the named plaintiff as the case comes to us, we refer only to Oshana.

Coke thought that Oshana's disclaimer of individual damages was unclear. It asked her to formally admit that in the event a class was not certified, Oshana would not individually seek disgorgement of all Coke profits from the sale of fountain Diet Coke in Illinois. Coke also asked Oshana to admit she would not individually seek an award of attorneys' fees over $75,000; punitive damages over $75,000; a combined award of compensatory and punitive damages and attorneys' fees over $75,000; or a combined award of disgorgement, attorneys' fees, and punitive damages over $75,000. Oshana refused to do so.

Coke removed the case to federal court invoking diversity jurisdiction and claiming a good-faith belief that the amount in controversy in fact exceeded the $75,000 threshold. *See* 28 U.S.C. § 1332. Oshana moved to remand; she argued the complaint unambiguously disclaimed individual damages in excess of $75,000 so that federal jurisdiction could not exist. The district court denied Oshana's motion to remand, concluding that Coke had established Oshana's damages could plausibly exceed $75,000. Oshana's refusal to admit otherwise reinforced the district court's conclusion. Defeated, Oshana filed an amended complaint in federal court praying for about $1000 in actual damages and, either as a class or individually, disgorgement of millions in Coke profits from the sale of fountain Diet Coke in Illinois.

The district court denied class certification, holding that Oshana could not satisfy the requirements of Federal Rule of Civil Procedure 23(a) or Rule 23(b). The district court held that Oshana's proposed class—"All individuals who purchased for consumption and not resale fountain Diet Coke in . . . Illinois from March 12, 1999, through the date of entry of an order certifying the class"—was not sufficiently ascertainable. The class could potentially include millions of customers, some (if not many) of whom may not have been deceived by Coke's marketing because

at least some of Coke's ads contained a disclaimer. The court also held that Oshana could not show her claims to be typical of the class. *See* FED. R. CIV. P. 23(a)(3). Oshana claimed she was deceived by Coke's marketing, but Coke's marketing may have been only a minor factor in the purchasing decisions of other class members. Moreover, some putative class members may have known about the presence of saccharin and bought fountain Diet Coke anyway. Finally, the district court concluded that Oshana could not satisfy any of the requirements of Rule 23(b).

The district court then partially granted Coke's summary judgment motion, limiting Oshana's claims because of the statute of limitations and holding that Oshana could not personally collect all of Coke's disgorged profits from the sale of fountain Diet Coke in Illinois if she prevailed on the merits. Instead, the court held she could recover only the $650 in damages she personally incurred. Coke made an offer of judgment for $650 plus reasonable attorneys' fees and costs (to be determined by the district court), *see* FED. R. CIV. P. 68, and Oshana accepted, reserving the right to appeal the issues of jurisdiction and the denial of class certification.

## II. Discussion

### A. Jurisdiction

Oshana's first argument is that her case never belonged in federal court. She maintains that $75,000 was never in controversy because she disclaimed damages in excess of the federal jurisdictional amount in her state-court complaint. Although the *amended* complaint sought millions in individual damages (by way of Coke's disgorged profits), Oshana argues that the amount in controversy was not satisfied because it is measured only at the time of removal and is not affected by later amendments.

We need not concern ourselves with the effect of the amended complaint in this case because removal was proper.

We review the propriety of removal de novo. *Boyd v. Phoenix Funding Corp.*, 366 F.3d 524, 529 (7th Cir. 2004). A defendant has the right to remove a case from state to federal court when the federal court could exercise jurisdiction in the first instance. 28 U.S.C. § 1441. In this case, subject-matter jurisdiction could be based only on diversity of citizenship. 28 U.S.C. § 1332. There is no question that the parties are diverse—Oshana is an Illinois citizen (as was her predecessor) and Coke is a Delaware corporation with its principal place of business in Georgia. The only question for us is whether the amount in controversy exceeded $75,000.

The amount in controversy is the amount required to satisfy the plaintiff's demands in full on the day the suit begins, *Hart v. Schering-Plough Corp.*, 253 F.3d 272, 273 (7th Cir. 2001), or in the event of removal, on the day the suit was removed, *BEM I, L.L.C. v. Anthropologie, Inc.*, 301 F.3d 548, 552 (7th Cir. 2002). Because Coke is the proponent of jurisdiction, it has the burden of showing by a preponderance of the evidence facts that suggest the amount-in-controversy requirement is met. *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006). That is easier said than done when the plaintiff, the master of the complaint, does not want to be in federal court and provides little information about the value of her claims. In such a case, a good-faith estimate of the stakes is acceptable if it is plausible and supported by a preponderance of the evidence. *See, e.g.*, *Rubel v. Pfizer, Inc.*, 361 F.3d 1016, 1020 (7th Cir. 2004). Once the defendant in a removal case has established the requisite amount in controversy, the plaintiff can defeat jurisdiction only if "it appears to a legal certainty that the claim is really for less than the jurisdictional amount." *St. Paul*

*Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938); *Meridian Sec.*, 441 F.3d at 541.

In a class action, the amount in controversy must be satisfied by one of the named plaintiffs; aggregating claims is not allowed for purposes of determining the jurisdictional amount.[2] *Del Vecchio v. Conseco, Inc.*, 230 F.3d 974, 977 (7th Cir. 2000); *Garbie v. DaimlerChrysler Corp.*, 211 F.3d 407, 409 (7th Cir. 2000); *In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 607 (7th Cir. 1997). Once one plaintiff satisfies the amount-in-controversy requirement for diversity jurisdiction, the other plaintiffs come in under the court's supplemental jurisdiction regardless of whether their individual claims satisfy the requirements of § 1332. 28 U.S.C. § 1367; *Exxon Mobil v. Allapattah Servs., Inc.*, 125 S. Ct. 2611, 2615 (2005); *In re Brand Name Prescription Drugs*, 123 F.3d at 607; *Stromberg Metal Works, Inc. v. Press Mach., Inc.*, 77 F.3d 928, 930-33 (7th Cir. 1996). So Coke must establish that at the time of removal Oshana personally had placed over $75,000 in controversy.

On the face of Oshana's state-court complaint, she did not. She expressly disclaimed individual damages over $75,000: "Plaintiff seeks no relief, cause of action, remedy or damages that would confer federal jurisdiction upon the claims asserted herein, and expressly disclaims individual damages in excess of $75,000." Such disclaimers have been long approved as a way of staying out of fed-

---

[2] The Class Action Fairness Act of 2005 ("CAFA") did away with the nonaggregation rule. *See* 28 U.S.C. § 1332(d)(6). But this case was filed before CAFA was enacted and CAFA is not retroactive. Pub. L. 109-2, § 9, 119 Stat. 14 ("The amendments made by this act shall apply to any civil action commenced on or after [February 18, 2005].”); *Exxon Mobil v. Allapattah Servs., Inc.*, 125 S. Ct. 2611, 2627-28 (2005).

eral court, *see St. Paul Mercury*, 303 U.S. at 294, but only when the disclaimer is binding. *BEM I, L.L.C.*, 301 F.3d at 552; *The Barbers, Hairstyling for Men & Women, Inc. v. Bishop*, 132 F.3d 1203, 1205 (7th Cir. 1997). Illinois does not bind plaintiffs to such disclaimers in complaints— like in federal court, plaintiffs in Illinois are not limited to the amounts they've requested. So Oshana's disclaimer had no legal effect. 735 ILL. COMP. STAT. 5/2-604 (2004); *BEM I, L.L.C.,* 301 F.3d at 552; *The Barbers*, 132 F.3d at 1205. If Oshana really wanted to prevent removal, she should have stipulated to damages not exceeding the $75,000 jurisdictional limit. *BEM I, L.L.C.,* 301 F.3d at 552; *Workman v. United Parcel Service, Inc.*, 234 F.3d 998, 1000 (7th Cir. 2000); *Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 430 (7th Cir. 1997); *In re Shell Oil Co.*, 970 F.2d 355, 356 (7th Cir. 1992) ("Litigants who want to prevent removal must file a binding stipulation or affidavit with their complaints . . . ."). A stipulation would have had the same effect as a statute that limits a plaintiff to the recovery sought in the complaint. *BEM I, L.L.C.*, 301 F.3d at 552.

The complaint sought several types of damages: actual damages; disgorgement of Coke's profits from the sale of fountain Diet Coke in Illinois; and attorneys' fees. Coke asked Oshana to admit in formal Requests for Admission that in the event the class was not certified, she would not personally seek (1) disgorgement of Coke's profits; (2) punitive damages in excess of $75,000; (3) attorneys' fees in excess of $75,000; (4) an award of compensatory and punitive damages and attorneys' fees in excess of $75,000; or (5) an award of disgorgement, punitive damages, and attorneys' fees in excess of $75,000. Oshana refused to admit any of those things. So when the district court considered whether jurisdiction was proper, it had only Coke's good-faith belief that the amount in controversy exceeded $75,000, facts suggesting the amount

Oshana sought may exceed $75,000, and Oshana's refusal to say otherwise.

Oshana's refusal to admit that she would not seek individual damages in excess of $75,000 worked against her. As we said in *Workman*, if the plaintiff does not stipulate to damages of $75,000 or less, "the inference arises that he thinks his claim may be worth more." 234 F.3d at 1000. Although the complaint said nothing about the amount of Oshana's actual damages, Coke's profits from the sale of fountain Diet Coke in Illinois during the relevant time period stretched into the millions. That alone would put this case securely over the amount in controversy were it not doubtful that Oshana could force Coke to cough up *all* of its profits from the sale of fountain Diet Coke in Illinois just by showing she alone had been deceived. But attorneys' fees up to the time of removal also count toward the jurisdictional amount, *see Smith v. Am. Gen'l Life & Accident Ins. Co.*, 337 F.3d 888, 896-97 (7th Cir. 2003); *Hart*, 253 F.3d at 273; *Gardynski-Leschuck v. Ford Motor Co.*, 142 F.3d 955, 957 (7th Cir. 1998), and an award of fees is properly considered in addition to compensatory damages and some degree of disgorgement. Oshana's refusal to admit that the combination of these recoveries would not exceed $75,000 raised the reasonable inference that it would.

Finally, although the complaint was silent about punitive damages, the ICFA permits recovery of punitive damages, and Oshana could have amended her state court complaint to seek a punitive damages award. Oshana's refusal to admit she would not seek more than $75,000 in compensatory damages, disgorged profits (recoverable individually), punitive damages, and attorneys' fees makes it plausible that more than $75,000 was at stake. Removal was proper.

This result is only fair. Oshana cannot benefit by playing a cat-and-mouse game, purporting to disclaim dam-

ages in excess of $75,000 but refusing to admit or stipulate that her damages will not exceed that amount. *See Rubel*, 361 F.3d at 1020 ("[P]laintiffs can't prevent removal by refusing to concede that the controversy exceeds the jurisdictional minimum . . . ."). A contrary result would be unjust. Oshana might have returned to state court and after the time had passed for removal, *see* 28 U.S.C. § 1446(b), amended her complaint to seek punitive damages and recovered more than $75,000. Coke wanted either to avail itself of federal jurisdiction (to which it was entitled if the amount in controversy was more than $75,000) or secure a binding commitment from Oshana that her claims did not exceed $75,000. Oshana cannot have it both ways—she cannot disclaim damages in excess of $75,000 in order to defeat federal jurisdiction but preserve her right to recover more than that amount by refusing to admit or stipulate to the jurisdictional limit.

Oshana argues that the district judge's ultimate holding that she could not individually recover more than $650 as a matter of law shows that it was a legal certainty all along that her claim did not exceed the jurisdictional minimum. Not so. Whether she *actually* recovers more than $75,000 is immaterial; what matters is the amount put in controversy on the day of removal. *BEM I, L.L.C.*, 301 F.3d at 552. On the day of removal, the district court had not narrowed the scope of Oshana's claims, but did so only at the time of the summary judgment motion in concluding that damages could be no more than $650. Also, as we have noted, it was not clear on the day of removal that Oshana would not seek or recover punitive damages, because she refused to stipulate or admit she would not. Moreover, it was not clear at the time of removal that adding attorneys' fees to compensatory and punitive damages and individually recoverable disgorged profits would total less than $75,000. There is no reason to believe *on the day the case was removed* that it was

*legally impossible* for Oshana to recover more than $75,000. *See Workman*, 234 F.3d at 999.

## B.  Class Certification

Oshana also challenges the district court's decision not to certify a class. The district court may certify a class of plaintiffs if the putative class satisfies all four requirements of Federal Rule of Civil Procedure 23(a)—numerosity, commonality, typicality, and adequacy of representation—and any one of the conditions of Rule 23(b). FED. R. CIV. P. 23; *Williams v. Chartwell Fin. Servs., Ltd.*, 204 F.3d 748, 760 (7th Cir. 2000). The plaintiff must also show (it is the plaintiff's burden to prove the class should be certified, *Trotter v. Klincar*, 748 F.2d 1177, 1184 (7th Cir. 1984)) that the class is indeed identifiable as a class. *Simer v. Rios*, 661 F.2d 655, 669 (7th Cir. 1981) ("It is axiomatic that for a class action to be certified a 'class' must exist."); *Alliance to End Repression v. Rochford*, 565 F.2d 975, 977 (7th Cir. 1977) (agreeing that class definitions must be definite enough that the class can be ascertained). We review the district court's decision not to certify a class for abuse of discretion. *Uhl v. Thoroughbred Tech. & Telecomm., Inc.*, 309 F.3d 978, 986 (7th Cir. 2002). The district court did not abuse its discretion.

The district court determined that the proposed class was not sufficiently definite to warrant class certification. Oshana sued Coke for violating the ICFA and for unjust enrichment. To prevail on a claim for damages under the ICFA, Oshana and her fellow class members must prove: (1) a deceptive act or practice by Coke; (2) that the act or practice occurred in the course of conduct involving trade or commerce; (3) that Coke intended Oshana and the members of the class to rely on the deception; and (4) that actual damages were proximately caused by the decep-

tion. *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 850 (Ill. 2005); *Oliveira v. Amoco Oil Co.*, 776 N.E.2d 151, 164 (Ill. 2002). In other words, a damages claim under the ICFA requires that the plaintiff was deceived in some manner and damaged by the deception. *Oliveira*, 776 N.E.2d at 164 ("*Zekman* [*v. Direct Am. Marketers*, 695 N.E.2d 853 (Ill. 1998),] makes clear that, to properly plead the element of proximate causation in a private cause of action for deceptive advertising brought under the Act, a plaintiff must allege that he was, in some manner, deceived.").

Membership in Oshana's proposed class required only the purchase of a fountain Diet Coke from March 12, 1999, forward. Such a class could include millions who were not deceived and thus have no grievance under the ICFA. Some people may have bought fountain Diet Coke *because* it contained saccharin, and some people may have bought fountain Diet Coke *even though* it had saccharin. Countless members of Oshana's putative class could not show any damage, let alone damage proximately caused by Coke's alleged deception. *See Oliveira*, 776 N.E.2d at 164 (holding that those who "knew the truth" do not have valid ICFA claims because they cannot claim to have been deceived).

For the same reasons, Oshana's claims were not typical of the putative class. A claim is typical if it "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and . . . her claims are based on the same legal theory." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). Even though some factual variations may not defeat typicality, the requirement is meant to ensure that the named representative's claims "'have the same essential characteristics as the claims of the class at large.'" *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 597 (7th Cir. 1993) (quot-

ing *De la Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)).

Oshana's proposed class includes people who knew fountain Diet Coke contained saccharin and bought it anyway. Oshana, on the other hand, claims she was deceived and injured. Also, Oshana's ICFA claim is subject to certain specific factual defenses that undermine typicality: she admitted she did not see any Coke advertisements during the relevant period and that she knew fountain and bottled Diet Coke were different because bottled Diet Coke tasted better. She also admitted that she continues to drink fountain Diet Coke even though she now knows it contains saccharin. We cannot say the district court's conclusion that Oshana's claims are atypical was an abuse of discretion.[3]

Oshana contends that this conclusion addresses only her deceptive marketing ICFA claim but not her "per se" ICFA violation claim or her unjust enrichment claim. She argues that it is a per se violation of the ICFA to represent that a product has ingredients it does not have because that is a violation of the Uniform Deceptive Trade Practices Act, and violations of the Uniform Deceptive Trade Practices Act are also violations of the ICFA. 815 ILL. COMP. STAT. 505/2. Oshana maintains that a per se violation of the ICFA does not require her to show actual damage caused by deception. It is true that a violation of the Uniform Deceptive Trade Practices Act violates the ICFA, 815 ILL. COMP. STAT. 505/2, but such violations do not automatically entitle an individual to damages. Unlike public actions for violating the ICFA, a private

---

[3] Because we find no abuse of discretion in the district court's consideration of the requirements of Rule 23(a), we need not address the district court's additional conclusion that the requirements of Rule 23(b) were not satisfied.

cause of action under the ICFA requires a showing of proximate causation. 815 ILL. COMP. STAT. 505/10a; *Oliveira*, 776 N.E.2d at 160 ("Unlike an action brought by the Attorney General under [815 ILL. COMP. STAT. 505/2], which does not require that 'any person has in fact been misled, deceived or damaged[,]' . . . a private cause of action brought under [815 ILL. COMP. STAT. 505/10a] requires proof of 'actual damage' . . . . [and] proof that the damage occurred 'as a result of' the deceptive act or practice." (citations omitted)). There is no per se violation that automatically makes Coke liable to Oshana and the members of the proposed class for private damages. Oshana's so-called per se claim suffers from the same typicality infirmities as her deceptive marketing claim.

Her unjust enrichment claim carries similar shortcomings. Oshana cannot show Coke was unjustly enriched unless she shows that Coke benefitted to her detriment, and that Coke's retention of the profits would violate the fundamental principles of justice, equity, and good conscience. *HPI Healthcare Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989). Unjust enrichment claims do not necessarily require wrongdoing on the part of the defendant, *see Stathis v. Geldermann, Inc.*, 692 N.E.2d 798, 812 (Ill. App. Ct. 1998), but in this case Coke cannot have been unjustly enriched without proof of deception. As such, the proposed class is not sufficiently identifiable or definite, nor is Oshana's claim sufficiently typical to qualify for class certification.

AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*