In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-1256

CHRISTINE MURO,

*Plaintiff-Appellant*,

*v.*

TARGET CORPORATION, et al.,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:04-cv-06267—**Rebecca R. Pallmeyer**, *Judge*.

ARGUED SEPTEMBER 12, 2008—DECIDED AUGUST 31, 2009

Before RIPPLE, ROVNER and EVANS, *Circuit Judges*.

RIPPLE, *Circuit Judge*. After receiving an unsolicited Target Visa card in the mail, Christine Muro brought this action, on behalf of herself and all others similarly situated, against Target Corporation, Target National Bank and Target Receivables Corporation (collectively "Target"). Ms. Muro alleged that Target had violated sections 127 and 132 of the Truth in Lending Act ("TILA"),

15 U.S.C. §§ 1637(a) & (c), 1642.[1] The district court granted summary judgment in favor of Target and denied Ms. Muro's motion for class certification of her TILA claims. For the reasons stated in this opinion, we affirm the judgment of the district court.

# I

## BACKGROUND

The basic facts of this case are straightforward. In light of the procedural posture of this case, we must construe them in the light most favorable to Ms. Muro. *See Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009).

Under its Autosubstitution Program, Target mailed unsolicited Visa Cards, along with an updated credit agreement, to Target Guest Card holders.[2] Guest Card holders had the option of activating their Visa Cards upon receipt. Once a Visa Card was activated, the corresponding Guest Card immediately was deactivated

---

[1] Ms. Muro's complaint also sets forth claims based on state law. She has not appealed the grant of summary judgment on any of these claims. Her arguments on appeal germane to those state claims are therefore moot, and we shall not address them.

[2] Target Guest Cards ("Guest Cards") differ from Target Visa Cards ("Visa Cards") in several ways. Guest Cards have ten- or twelve-digit account numbers and may be used only in Target stores. Visa Cards have sixteen-digit account numbers, may be used outside of Target stores, and have higher credit limits, cash advance options and different terms and conditions.

and any balance remaining on the Guest Card was transferred to the Visa Card.

Ms. Muro applied for and received a Guest Card on April 4, 1998. In December 1999, she paid the balance owed on her Guest Card and requested that her account be closed. She received no further correspondence from Target for nearly five years. In August 2004, however, Ms. Muro received an unsolicited Visa Card in the mail. She did not activate the Visa Card and did not incur any charges or fees associated with the card. She subsequently brought this action against Target on behalf of herself and all others similarly situated. The district court's treatment of each claim will be described in our discussion of that claim. In summary, Ms. Muro settled her claim under section 1642 of TILA, and the district court denied class certification on that claim. On the claims under section 1637 of TILA, the court granted summary judgment to Target and denied class certification.

## II

## DISCUSSION

### A. The Section 1642 Claim

In Count I of her complaint, Ms. Muro alleged that the unsolicited issuance of Visa Cards to Guest Card holders violated section 1642 of TILA. This section provides, in pertinent part, that "[n]o credit card shall be issued except in response to a request or application therefor. This prohibition does not apply to the issuance of a

credit card in renewal of, or in substitution for, an accepted credit card." 15 U.S.C. § 1642.

Ms. Muro brought her section 1642 claim on behalf of "[a]ll persons who were mailed a 'Target VISA' card by Target without first requesting or applying for said card, including Target Guest Card cardholders who received a 'Target VISA' without requesting a 'Target VISA.'" R.6 at 2; R.102 at 21. The district court concluded that this proposed class included at least two distinct groups: Those who, like Ms. Muro, had cancelled their Target Guest Card or otherwise did not have an open Guest Card account prior to receiving a Visa Card,[3] and those who held an open Guest Card account at the time they received the Visa Card. The district court concluded that, for a person with an open Guest Card account, the substitution of Visa Cards for Guest Cards did not violate section 1642. The court also held, however, that Ms. Muro's individual claim remained viable because she had alleged that she closed her Guest Card account prior to receiving a Visa Card.

The court then denied the motion for class certification on the section 1642 claim. The district court concluded that the class proposed by Ms. Muro should not be certified because Ms. Muro's claims were not typical of the claims of the proposed class; unlike most of the proposed class members, Ms. Muro had alleged that she

---

[3] The district court, viewing the facts in the light most favorable to Ms. Muro, accepted as true her claim that she had closed her Guest Card account.

had closed her Guest Card account.[4] In the district court's view, the class that Ms. Muro would be capable of representing would consist of

> [a]ll persons who were mailed a Target Visa Card without first requesting or applying for said card, and who did not at the time hold any active Target-branded credit card, including Target Guest Card holders who had cancelled their Guest Card[s] prior to issuance of the Visa Card.

R.102 at 21. The court determined, however, that certification of this alternative class also would be improper because Ms. Muro had failed to demonstrate that such a class was "so numerous that joinder of all members [was] impracticable." *Williams v. Chartwell Fin. Servs., Ltd.*, 204 F.3d 748, 760 (7th Cir. 2000) (citing Fed. R. Civ. P. 23(a)). Accordingly, the district court denied Ms. Muro's motion for class certification.

Ms. Muro subsequently settled her individual section 1642 claim, while reserving her right to appeal the class certification issue. The merits of Ms. Muro's claim, therefore, are not properly before us. Having accepted an offer of judgment, Ms. Muro has no cognizable interest in our evaluation of the district court's decision on that issue. The question of whether she nevertheless can appeal the district court's decision not to certify

---

[4] According to Target, the Autosubstitution Program's primary purpose was to replace its existing card holders' Guest Cards with Visa Cards.

the proposed class is more complex; we now turn to that issue.

## 1.

At the outset, we pause to make clear the narrow issue presented by this case. This case does *not* present the more frequently encountered situation that we confronted in *Wiesmueller v. Kosobucki*, 513 F.3d 784, 786 (7th Cir. 2008). There, we noted that, if a plaintiff's individual claim *becomes moot* while his appeal of the denial of his motion for class certification is pending, that appeal is not moot "because unless and until the appellate court affirms the denial of the motion to certify a class, there may be people other than the plaintiff with a legally protected interest in the suit." *Id.* at 786. In *Weismueller*, the plaintiff's individual claim was mooted by intervening events, rather than the plaintiff's voluntary settlement of his claim; here, by contrast, we are confronted with the question of whether a named plaintiff in a putative class action can *settle* her own claim and still appeal the court's denial of her motion for class certification. The Supreme Court recognized that this was an open question in *United States Parole Commission v. Geraghty*, 445 U.S. 388, 404 n.10 (1980), and it declined to answer the question at that time.

In exploring this issue, our starting point must be the Supreme Court's decision in *Geraghty*. There, the Court made clear that the named plaintiff in a putative class action possesses, in effect, dual rights: (1) his personal

substantive rights; and (2) his rights as a member of a class in the putative class action. As we have just mentioned, however, the Court did not answer, although it noted, the problem of whether a plaintiff who has settled his substantive claim should be permitted to appeal the court's refusal to certify the class.

The Court's decision in *Deposit Guaranty National Bank v. Roper*, 445 U.S. 326 (1980), decided the same day as *Geraghty*, is our next guidepost. In that case, holders of credit cards issued by the defendant bank sued the bank for damages and sought to represent their own interests as well as those of a class of similarly situated customers. They claimed that the bank had violated the National Bank Act, 12 U.S.C. §§ 85 & 86, by charging the plaintiffs and the class they sought to represent usurious finance charges. The district court denied class certification on the ground that the class did not meet all of the requirements of Federal Rule of Civil Procedure 23 (b)(3), but certified its ruling on that issue for discretionary appeal under 28 U.S.C. § 1292(b). The court of appeals, however, denied the card holders' interlocutory appeal. The bank then tendered to each named plaintiff the maximum amount that each would have recovered had the suit been successful. The card holders refused the tender. The district court nevertheless entered judgment for the card holders in the amount of the tender, which was later deposited in the court's registry, and dismissed the case.

The card holders then appealed the district court's refusal to certify the class. The court of appeals held that

the case had not been mooted by the entry of judgment in favor of the card holders. The Supreme Court agreed. It held that neither the tender offer, nor the entry of judgment in the card holders' favor by the district court, prevented the card holders from appealing the adverse ruling on the class certification issue. Central to the Court's holding was its statement that, in order to appeal, a party must be able to demonstrate that it retains a stake in the appeal of the class certification requirement that is sufficiently concrete to satisfy the case-or-controversy requirement of Article III. *Id.* at 334. Here, observed the Court, the card holders had such a concrete interest because they had asserted, throughout the litigation, a continuing individual interest in shifting part of the cost of litigation to the class members. *Id.* at 336.

While *Roper* certainly sheds light on the path before us, it does not provide us with an answer to the precise question presented in this case: whether an individual who settles her individual claim nevertheless may appeal the denial of a motion for class certification. As our colleagues in the Fifth Circuit remarked in *Dugas v. Trans Union Corporation*, 99 F.3d 724, 728 (5th Cir. 1996), it would be unwise for us to believe that the Court answered a question in *Roper* that it expressly and unambiguously had left open that same day in *Geraghty*.

**2.**

In the wake of *Geraghty* and *Roper*, several courts of appeals have confronted the issue of whether a prospec-

tive class representative who has settled his personal claim can appeal the denial of class certification; those courts have acknowledged that a plaintiff seeking to appeal such a ruling must have a personal stake in the definitive adjudication of the class-certification issue. *See, e.g., Richards v. Delta Air Lines, Inc.*, 453 F.3d 525, 529 (D.C. Cir. 2006); *Walsh v. Ford Motor Co.*, 945 F.2d 1188, 1191, 1191 n.5 (D.C. Cir. 1991). Most of the circuits that have considered the issue have held that "a named plaintiff's unqualified release of claims relinquishes not only his interest in his individual claims but also his interest in class certification." *Toms v. Allied Bond Collection Agency, Inc.*, 179 F.3d 103, 105 (4th Cir. 1999) (collecting cases); *see Seidman v. City of Beverly Hills,* 785 F.2d 1447, 1448 (9th Cir. 1986). There is, however, disagreement as to whether a reservation of the right to appeal the class certification issue is alone sufficient to permit a prospective class representative who has settled his individual claim to appeal the class certification ruling.

Our neighbor to the west, the Eighth Circuit, in *Potter v. Norwest Mortgage, Inc.*, 329 F.3d 608, 612-15 (8th Cir. 2003), and more recently in *Anderson v. CNH U.S. Pension Plan*, 515 F.3d 823 (8th Cir. 2008), has made it emphatically clear that, in its view, the mere recitation in a settlement agreement that the plaintiff reserves the right to appeal the denial of class certification is not sufficient to create the sort of concrete interest in the class certification issue that *Roper* requires. *See Anderson,*

515 F.3d at 827; *Potter*, 329 F.3d at 614 n.3.[5] The court relied heavily on the opinion of the Fourth Circuit in *Toms*, 179 F.3d at 105-06, and emphasized the centrality of the Article III case-or-controversy requirement to the question of whether a settling plaintiff retains an interest in appealing the denial of class certification. In the Eighth Circuit's view, the mere reservation of the right to appeal does not satisfy the case-or-controversy requirement; that constitutional requirement mandates that the plaintiff show that he has a personal stake, such as the interest in fee-shifting at issue in *Roper,* to demonstrate a *concrete* personal interest in the appeal. *Accord Richards*, 453 F.3d at 529.

By contrast, some other courts emphasize *Geraghty*'s and *Roper*'s characterization of the proposed class action representative as possessing, separate and apart from his individual substantive interests in the litigation, a procedural interest in the resolution of the class certification issue. These courts apparently believe that a reservation of the right to appeal the class certification issue in a settlement agreement is sufficient to give the proposed class representative standing to appeal the class certification issue without any further showing of

---

[5] That court, however, did note that a plaintiff *may* have a continuing interest in the class certification issue if he " 'retains an interest in shifting costs and attorney fees to the putative class members.' " *Anderson v. CNH U.S. Pension Plan*, 515 F.3d 823, 827 (8th Cir. 2008) (quoting *Potter v. Norwest Mortgage, Inc.*, 329 F.3d 608, 614 (8th Cir. 2003)).

a concrete interest in the resolution of the issue. *See Dugas*, 99 F.3d at 729 (dicta). Indeed, one circuit might permit a proposed class representative who settles her individual claims to appeal the denial of class certification even without an explicit reservation of the right to appeal that issue. *See Love v. Turlington*, 733 F.2d 1562, 1565 (11th Cir. 1984).[6] *See also Nichols v. Mobile Bd. of Realtors, Inc.*, 675 F.2d 671 (5th Cir. Unit B 1982) (by implication). *But see Armour v. City of Anniston*, 654 F.2d 382, 384 (5th Cir. Unit B 1981) (per curiam).

We believe that the decisions of the Fourth and Eighth Circuits exhibit a higher degree of faithfulness to the rationale of *Roper* that there be an actual case or controversy at *all* stages of the litigation, including the appeal of the class certification issue. A *voluntary* settlement by the

---

[6] In *Love v. Turlington*, 733 F.2d 1562, 1565 (11th Cir. 1984), the Eleventh Circuit noted that it found "no meaningful distinction between the settlement of the claim . . . at issue and the expiration of the claim in *Geraghty* for purposes of the ability of the named plaintiff to pursue an appeal of the denial of certification." Neither *Love* nor the other cases from the Eleventh Circuit explicitly say that the named plaintiff retains an interest in the class certification issue even in the absence of any mention of the issue in the settlement agreement, but the absence of any mention of the need for such a reservation makes this reading the most plausible. *See also Cameron-Grant v. Maxim Healthcare Servs., Inc.*, 347 F.3d 1240, 1246-47 (11th Cir. 2003); *Martinez-Mendoza v. Champion Int'l Corp.*, 340 F.3d 1200, 1215-16 (11th Cir. 2003); *Armstrong v. Martin Marietta Corp.*, 138 F.3d 1374, 1383 n.16 (11th Cir. 1998).

prospective class representative often means that, as a practical matter, the settling individual has elected to divorce himself from the litigation and no longer retains a community of interests with the prospective class. Only if issues personal to the prospective class representative remain alive in the litigation can a court be assured that there remains sufficient concrete adverseness to ensure that the class certification issue is presented in a truly adversarial manner and, consequently, will be litigated comprehensively and clearly. An abstract interest in a matter never has been considered a sufficient basis for the maintenance of—or the continuation of—litigation in the federal courts. *See United States v. Richardson*, 418 U.S. 166, 177 (1974); *Sierra Club v. Morton*, 405 U.S. 727, 739 (1972); *Baker v. Carr*, 369 U.S. 186, 206-08 (1962).

**3.**

We now turn to an application of these principles to the case before us. On December 11, 2007, Ms. Muro accepted Target's offer of judgment with respect to Count I. She did so on the understanding that the offer and her acceptance preserved her "right to appeal all of [the district court's] adverse orders." R.292 at 1. Nowhere, however, does she indicate that, given the resolution of her personal substantive claims, she retained a concrete interest in the resolution of the class certification issue. Indeed, unlike the plaintiff in *Roper*, she received in her settlement compensation for both her costs of the action and her reasonable attorney's fees. Therefore,

although *Geraghty* and *Roper* suggest that a named plaintiff's interest in distributing the costs of litigation among class members can support a finding that the plaintiff retains a personal stake in the class certification issue, it cannot be said that Ms. Muro retains an interest in that particular benefit in this case.

Under these circumstances, we can discern no live, concrete controversy between Ms. Muro and Target that can justify permitting her to appeal the district court's determination with respect to the certification of the class.

**4.**

Even if we were to determine that Ms. Muro has the right to appeal the class certification issue, we would have no hesitation in holding that the district court did not clearly err in denying Ms. Muro's motion for class certification of her section 1642 claim. Taking the facts as she alleges them, it is readily apparent that her claim is very different from the claims of the majority of the class members. Indeed, this difference, standing alone, is a sufficient basis upon which to decline to certify Ms. Muro's proposed class.

Federal Rule of Civil Procedure 23(a) requires, among other things, "that the claims or defenses of the representative part[y] [be] typical of the claims or defenses of the class." *Williams*, 204 F.3d at 760. Although "[t]he typicality requirement may be satisfied even if there are factual distinctions between the claims of the named

plaintiffs and those of other class members," the require-ment "primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). Only in the broadest way can we say that Ms. Muro's claim "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and . . . [is] based on the same legal theory." *Id.* Indeed, her claim involves facts that distinguish her claim from the claims of her fellow class members and undermine the typicality that the Rule demands. *See Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (holding that the typicality re-quirement was not satisfied where the plaintiff's pro-posed class "include[d] people who knew fountain Diet Coke contained saccharin and bought it anyway" when the plaintiff "claim[ed] she was deceived and injured").

The factual differences between Ms. Muro's claims and the claims of her fellow putative class members are significant; as a result of these differences, certain provi-sions of TILA that apply in Ms. Muro's case may not apply to most of her proposed fellow class members. TILA's prohibition against issuing credit cards in the absence of a request or application "does not apply to the issuance of a credit card in renewal of, or in substitu-tion for, an accepted credit card." 15 U.S.C. § 1642. Unlike those class members who did not close their Guest Card accounts before receiving a Visa Card, Ms. Muro's claim in no way depends on whether the

Visa Cards were "renewal[s] of," or "substitution[s] for" the Guest Cards. *Id.; see also* 12 C.F.R. § 226.12(a)(1)-(2). Unlike those whose Guest Cards were "autosubstituted" by an unwanted Visa Card, Ms. Muro may contend that the unwanted Visa Card that she received was not a substitute for her Guest Card because she had closed her Guest Card account years before.[7] She therefore would have little incentive to litigate vigorously whether the Visa Cards should be considered renewals of, or substitutes for, open Guest Cards. *See Robinson v. Sheriff of Cook County*, 167 F.3d 1155, 1157 (7th Cir. 1999) ("[I]f [a plaintiff's] claim is atypical, he is not likely to be an adequate representative; his incentive to press issues important to the other members of the class will be impaired." (citing *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 157 n.13 (1982))). The district court clearly did not err in concluding that Ms. Muro's claims were not typical of the claims of the proposed class. *See Oshana*, 472 F.3d at 514.

Moreover, with respect to the class in which Ms. Muro could claim membership, those who received an unsolicited Visa Card but who did not have a Target Guest Card at the time, the district court correctly concluded that Ms. Muro had made no showing of the numerosity of such a class.

---

[7] We express no opinion as to whether those class members whose open Guest Cards were "autosubstituted" successfully could claim, on some other basis, that the Autosubstitution program "issued" new Visa Cards that were neither a renewal of nor a substitute for their Guest Cards.

### B. The Section 1637 Claims

Ms. Muro next claims that the Autosubstitution program violated 15 U.S.C. § 1637(a), which requires a creditor to make certain disclosures "[b]efore opening any account under an open end consumer credit plan." 15 U.S.C. § 1637(a). The parties do not dispute whether Target made the required disclosures; the only point of contention is whether the disclosures were made before the account was opened.

We have not had occasion to address with any specificity when an account is "open" for the purposes of section 1637(a).[8] TILA is silent on this issue; however, Congress has delegated substantial authority to the

---

[8] Although we have not gone so far as to define the meaning of "open," this court has discussed the issue of when a duty to make disclosures arises under section 1637 in the statute-of-limitations context. In *Goldman v. First National Bank of Chicago*, 532 F.2d 10, 18 (7th Cir. 1976), we noted that, although section 1637(a) imposes a duty on lenders to disclose certain information before an account is opened, "[i]n practical terms, under an open end credit plan, there is no extension of credit simply by the issuance of [a credit] card." *Id.* at 18, 20. After noting the language of Regulation Z, we concluded that "[i]f . . . there is a violation of [section 1637] in an open end credit plan, it occurs at the time the account is opened, or at the very latest, some time before the first transaction takes place." *Id.* at 20. Thus, although we concluded that a creditor's duty to disclose information under section 1637 arises some time before the first transaction is negotiated, we did not address precisely when a creditor is obliged to make those disclosures.

Federal Reserve Board to issue regulations containing "such classifications, differentiations, or other provisions" as are "necessary or proper to effectuate the purposes" of TILA. 15 U.S.C. § 1604(a). Acting under this authority, the Federal Reserve Board has issued Regulation Z, which specifies that initial disclosures must be made "before the first transaction is made under the plan." 12 C.F.R. § 226.5(b)(1).[9] Given the language of Regulation Z, we conclude that when a card issuer

---

[9] The provisions of Regulation Z are afforded substantial weight. In *Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 358 (1973), the Supreme Court evaluated whether the Federal Reserve Board exceeded its authority by promulgating the "Four Installment Rule" of Regulation Z. The Court concluded that, because Congress "delegated to the Federal Reserve Board broad authority to promulgate regulations necessary to render [TILA] effective," the rules promulgated under that authority "will be sustained so long as [they are] reasonably related to the purposes of the enabling legislation." *Id.* at 365-69 (citations and quotation marks omitted). *See also Cetto v. LaSalle Bank Nat'l Ass'n*, 518 F.3d 263, 274 (4th Cir. 2008) (stating that "we must accord strong deference to Regulation Z"); *DBI Architects, P.C. v. Am. Express Travel-Related Servs. Co.*, 388 F.3d 886, 892 (D.C. Cir. 2004) (noting that "courts owe deference to the Board's regulations and its interpretation of its regulations under TILA" (citations omitted)). This court has recognized that "[t]he official staff opinions of the Federal Reserve Board construing TILA and Regulation Z are binding on this court unless they are demonstrably irrational." *Walker v. Wallace Auto Sales, Inc.*, 155 F.3d 927, 931 n.5 (7th Cir. 1998) (citations and quotation marks omitted).

makes the necessary disclosures before the card is activated, before any fees are incurred and before any charges are made to the new account, the card issuer clearly has satisfied the requirements of section 1637(a); it has made the required disclosures before the account is "open" in any sense of the word.

In addition, we agree with the district court that the same admissions that render the section 1637(a) claim without merit also render the section 1637(c) claim without merit. Ms. Muro has admitted that she never activated the Visa Card, never incurred any fees on the Visa Card and never made any charges to the Visa Card. She is therefore precluded from obtaining relief under section 1637(c). *See* 15 U.S.C. § 1640(a) ("In connection with the disclosures referred to in subsection (c) or (d) of section 1637 of this title, a card issuer shall have a liability under this section only to a card holder who pays a fee described in section 1637(c)(1)(A)(ii)(I) or section 1637(c)(4)(A)(i) of this title or who uses the credit card or charge card.").

The district court also denied Ms. Muro's motion for class certification with respect to the section 1637 claims; it held that, because Ms. Muro did not have a claim under either section 1637(a) or section 1637(c), she was not a member of the proposed class, and she therefore was ineligible to serve as a class representative. *Foster v. Ctr. Twp. of LaPorte County*, 798 F.2d 237, 244 (7th Cir. 1986) ("It is, of course, axiomatic that the named representative of a class must be a member of that class."). In her brief, Ms. Muro argued only that class certifica-

tion of this issue is appropriate "[i]f this court reverses [the district court's] decision" on the merits of either of those claims. Appellant's Br. 52. Because we affirm the decision of the district court with respect to both of Ms. Muro's section 1637 claims, we need not address whether the court abused its discretion by denying her motion for class certification.

## Conclusion

For the reasons set forth in this opinion, the judgment of the district court is affirmed.

AFFIRMED