# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-8001

ABM SECURITY SERVICES, INC.,

*Petitioner,*

*v.*

TYRONE DAVIS, *et al.*,

*Respondents.*

Petition for Permission to Appeal from
the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 10 C 5958—**Milton I. Shadur**, *Judge.*

SUBMITTED FEBRUARY 28, 2011—DECIDED JUNE 16, 2011

Before BAUER, KANNE, and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge.* ABM Security Services, Inc., petitions to appeal the district court's remand of this case to state court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1453(c)(1) ("CAFA"). The plaintiffs, employees of ABM, filed their proposed class action in Illinois state court, alleging that ABM violated the Illinois Minimum Wage Law ("IMWL") when it failed to

compensate employees for time spent working before and after their shifts. ABM removed the case to federal court asserting that the court had jurisdiction under CAFA. The district court concluded that ABM failed to show that the amount in controversy exceeds $5,000,000, as required to establish CAFA jurisdiction. 28 U.S.C. § 1332(d)(2). The parties do not dispute that CAFA's other jurisdictional requirements are met. We grant ABM's petition for permission to appeal and reverse the district court's order remanding the case to state court.

ABM twice amended its notice of removal, each time responding to instructions from the district court and further refining its calculation of the amount in controversy. Included in the amount in controversy are compensatory damages for the three-year period immediately preceding the filing of the original complaint, interest on all regular and overtime compensation due, and costs and attorneys' fees. The IMWL also provides for a punitive-damages award. See 820 ILL. COMP. STAT. 105/12(a) (providing for "damages of 2% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid").

In its initial notice of removal, ABM calculated that the amount in controversy could be as high as $10.7 million, exclusive of attorneys' fees. ABM estimated that hourly security guards spent approximately thirty minutes per day performing the duties that are the subject of plaintiffs' allegations; this would result in two-and-a-half hours of unpaid work per week for full-

time employees and thirty minutes for part-time employees. ABM multiplied the number of employees by their average wage rate and the number of unpaid hours for the relevant time period. This resulted in $6.2 million in compensatory damages. Adding the 2% penalty raised the amount in controversy to $10.7 million. ABM noted that this figure did not include any adjustment for overtime rates for any of the hours, which could raise the amount by another $1.5 million.

At a hearing the district court instructed ABM to exclude a subset of putative class members who had opted into a related class action pending in California. The court also requested additional information relating to the number of weeks worked by members of the putative class. ABM then filed an amended notice of removal with revised calculations. If the unpaid wages were straight time, ABM calculated, they would total $3,014,812; if they were overtime, they would total $4,552,218. Adding the 2% statutory penalty, ABM calculated the amount in controversy using straight wages as $5,185,476.64, and using overtime wages as $7,778,214.96.

The district court again directed ABM to provide additional data regarding the precise number of days worked by the putative class members and to exclude vacation or sick days from the amount-in-controversy calculation. After review of its production records, ABM filed another amended notice of removal and included a summary of the production records as an exhibit. ABM calculated the number of holiday and nonholiday days employees worked for each calendar year and deter-

mined the average holiday and nonholiday wage rate for each year. ABM again estimated that plaintiffs were alleging they were required to perform thirty minutes of unpaid work each day. Using these figures, ABM calculated that the potential back-pay damages were $3,801,204.07. Adding a 2% statutory penalty of $1,442,878.07, ABM calculated the total amount in controversy as $5,244,082.14.

The district court disagreed and held that the amount in controversy was approximately $5,500 short of the $5 million jurisdictional requirement. It accepted the calculation of relevant back-pay damages, but took issue with the calculation of the 2% statutory penalty. The district court thought ABM mistakenly doubled the multiplier for each year's damages and also failed to properly apply the date when the statutory penalty begins to accumulate. The court made an independent calculation of the statutory penalty and held that it was $1,193,244, making the total amount in controversy $4,994,448.07. With regard to attorneys' fees, the court said that as of the date of removal, counsel for the putative class had "simply filed the Complaint, legal work that did not push the total past the $5 million-plus floor prescribed by CAFA."

ABM argues that the district court erred when it calculated the statutory penalty and when it held that plaintiffs' request for reasonable attorneys' fees would not push the amount in controversy over $5 million. In its petition ABM attempts to recreate the district court's calculations and also shows its own calculations in the

form of several charts. ABM argues that the district court erred when it calculated that no penalty accrued until October 2007. The IMWL provides for "damages of 2% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain underpaid." 820 ILL. COMP. STAT. 105/12(a). Plaintiffs filed their lawsuit on August 13, 2007. ABM says that in accordance with the Illinois Wage Payment and Collection Act, 820 ILL. COMP. STAT. 115/3, it pays wages biweekly with one week in arrears; wages that were due between August 13 and 17 were paid on August 24, 2007. They argue that the "month following the date of payment," August 24, is September, so the penalty would start to accrue in September, instead of October as the district court calculated. This results in a penalty of $1,323,971.92, for a total amount in controversy of $5,125,235.97. Alternatively ABM argues that even if the penalty does not begin accruing until September 24, one full month after the date of payment, it would still result in a penalty of $1,248,485.11 and an amount in controversy of $5,049,749.18.

In our recent decision in *Back Doctors Ltd. v. Metropolitan Property & Casualty Insurance Co.*, 637 F.3d 827, 830 (7th Cir. 2011), we reiterated the legal standard to be used when determining if the amount in controversy is met.

> When removing a suit, the defendant as proponent of federal jurisdiction is entitled to present its own estimate of the stakes; it is not bound by the plaintiff's estimate. . . . Once this has been done, and supported by proof of any contested jurisdictional facts,

> the presumption is the one stated in *St. Paul Mercury*:
> the estimate of the dispute's stakes advanced by
> the proponent of federal jurisdiction controls unless
> a recovery that large is legally impossible.

*Id.* (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 293 (1938)). And even more recently we emphasized that "[o]nce the proponent of federal jurisdiction has explained plausibly how the stakes exceed $5,000,000, the case belongs in federal court unless it is legally impossible for the plaintiff to recover that much." *Blomberg v. Serv. Corp. Int'l*, 639 F.3d 761, 764 (7th Cir. 2011) (internal citation omitted).

ABM's calculations regarding the accrual of the statutory penalty are a reasonable interpretation of the IMWL's statutory language. In its remand order, the district court gave two theories for why it thought ABM's calculations were wrong, though it acknowledged that counsel had disputed any mistake at a recent status hearing. The district court then asserted that its independent calculations avoided the errors the court attributed to ABM. But the court did not show its own calculations in the order or explain how it calculated the statutory penalty. Had ABM provided the district court with the charts and comprehensive explanation included in its petition, this appeal may have been avoided. Even so, once ABM laid out its calculations showing that the amount in controversy exceeded $5 million, the district court needed to find that it was legally impossible for plaintiffs to recover that much. *See Back Doctors*, 637 F.3d at 830. The district

court's order does not establish that ABM's calculations regarding the plaintiffs' potential recovery were legally impossible.

The district court also failed to satisfactorily explain why it was legally impossible for there to be at least $5,552 in attorneys' fees in controversy at the time of removal. The district court correctly held that only attorneys' fees incurred up to the time of removal could be included in the amount in controversy. *See Oshana v. Coca-Cola Co.*, 472 F.3d 506, 512 (7th Cir. 2006). But the court said that because plaintiffs' counsel had "simply filed the Complaint," it did not push the amount in controversy past the jurisdictional requirement. Attorneys' fees are available for work performed prior to filing a complaint, and it is quite plausible that the value of preliminary legal work in a class-action lawsuit exceeds $5,552.

For these reasons, we GRANT the petition for permission to appeal, REVERSE the district court's decision, and REMAND the case for further proceedings.